THE CITY OF GRAND RAPIDS V. WILLIAM T. POWERS.

*Waters and water-courses—Establishment of dock-lines—Riparian rights—Navigable waters.*

1. The establishment by the board of public works of the city of Grand Rapids of dock and building lines on the shores and margin of that portion of Grand river lying within the corporate limits of said city, pursuant to the provisions of Act No. 292, Local Acts of 1885, amendatory of its charter, without notice to the riparian owners and giving them an opportunity to be heard, cannot be sustained.

2. Whatever may be the power of the Legislature in waters strictly navigable to fix an arbitrary line beyond which riparian owners cannot go, or to delegate such power to a municipality, no such right exists in that portion of the waters of a river which are not at the time navigable for any purpose.

3. There is a manifest difference between public streams that can be used successfully for the running of boats and vessels for the purpose of commerce, and those which are only capable of being used for the floatage of lumber and logs in rafts or single pieces. The riparian owners are entitled to the beneficial and sole use of the latter streams, except for such floatage; and when such streams have become unfitted for valuable public use, and have actually ceased to be used for public highways, there is no more reason for holding them to be public than in the case of a land highway which has been abandoned and is useless; citing *Sterling v. Jackson*, 69 Mich. 510, per CAMPBELL, J.; *Booming Co. v. Jarvis*, 30 Id. 308; *Middleton v. Booming Co.*, 27 Id. 533.

4. The Legislature has no power to authorize a municipality to make that a purpresture or nuisance which is not so in fact, if, by so doing, the constitutional rights of any citizen in his person or property are infringed or destroyed; citing *Wreford v. People*, 14 Mich. 41; *Everett v. Marquette*, 53 Id. 450; *In re Frazee*, 63 Id. 396; *Robison v. Miner*, 68 Id. 556; *People v. Armstrong*, 73 Id. 288.

5. The owner in fee of land adjoining the "Rapids," so called, in Grand river, which are not navigable for any purpose, may construct anything he pleases between his shore-line and the

thread of the stream, unless it injures some other riparian proprietor, or those having the superior right to the use of the water for hydraulic purposes. Subject to these restrictions, he has the right to use his land under water the same as that above water, it being his private property under the protection of the Constitution, and it cannot be taken, or its value lessened or impaired, even for public use, without compensation or without due process of law, and it cannot be taken at all for any one's private use; citing *City of Janesville v. Carpenter*, 77 Wis. 288.

6. The right of the Legislature to empower the city of Grand Rapids to establish dock-lines within the limits of the navigable part of Grand river lying within its corporate limits, if there be such navigable water, and to prevent any encroachments upon or obstructions within the water so outlined as navigable, is not passed upon in this case; nor is it decided that the city may not make and enforce all needful and reasonable rules and regulations as to the public and private use of the river necessary to the public health, or to prohibit any encroachment upon the river bed which will tend seriously to increase the danger of floods and the consequent destruction of property.

Appeal from superior court of Grand Rapids. (Burlingame, J.) Argued May 14, 1891. Decided December 21, 1891.

Bill to enjoin the construction of a wall in Grand river by a riparian owner. Defendant appeals. Decree reversed. The facts are stated in the opinion.

*William Wisner Taylor*, for complainant.

*Edwin F. Uhl*, of counsel, for complainant, contended:

1. In the absence of the legislation of Congress, legislation by the state regulating the use of a navigable river is constitutional; citing *Pound v. Turck*, 95 U. S. 459; *Escanaba Co. v. Chicago*, 107 Id. 678.

2. Grand river, from the time of the admission of Michigan into the Union hitherto, has been continually recognized as a navigable stream by the legislative authority of the State; citing Act No. 82, Laws of 1837; Act No. 72, Laws of 1839; Act No. 43, Laws of 1840; Act No. 72, Laws of 1844; Act No. 19, Laws of 1847; Act No. 22, Laws of 1848; Act No. 125, Id.; Act No.

216, Laws of 1849; Act No. 36, Laws of 1850; Act No. 247, Id., p. 267; Act No. 101, Laws of 1855; Act No. 122, Laws of 1857, p. 287; Act No. 320, Laws of 1873, Vol. 3, p. 52; Act No. 282, Local Acts of 1877, p. 134; Act No. 292, Local Acts of 1885, pp. 84, 85; and the Supreme Court of the United States has expressly decided that Grand river is a navigable stream; citing *The Daniel Ball*, 10 Wall. 557, 564.

3. Act No. 292, Local Acts of 1885, which conferred upon the board of public works of the city of Grand Rapids power and authority to establish dock and building lines on the shores and margin of the river, was a constitutional exercise of legislative power, and the defendant had no right to build a wall in the waters of the river beyond the dock and building line established by the board of public works; citing Cooley, Const. Lim. (5th ed.) 740; 1 Dill. Mun. Corp. (3d ed.) 136; *Hart v. Mayor*, 3 Paige, 213, 9 Wend. 571; *Com. v. Alger*, 7 Cush. 53; *People v. Vanderbilt*, 26 N. Y. 287, 28 Id. 396, 398; *Attorney General v. Woods*, 108 Mass. 436; *Attorney General v. Railroad Co.*, 118 Id. 345; *Gas Light Co. v. Industrial Works*, 28 Mich. 182; *State v. Sargent*, 45 Conn. 358.

4. The defendant, on the ground that he is a riparian owner, cannot construct this wall in the waters of Grand river without authority from the State or the board of public works of the city; citing *Hart v. Mayor*, 9 Wend. 571; *People v. Vanderbilt*, 26 N. Y. 287, 28 Id. 396; *Atlee v. Packet Co.*, 21 Wall. 389, 394.

5. The State has full authority to regulate the use of the waters in Grand river; citing *Lorman v. Benson*, 8 Mich. 18; *Benjamin v. Improvement Co.*, 42 Id. 628, 635.

6. The act of the defendant is what is known in law as a "purpresture," and the State may interfere whenever a riparian owner begins to erect a structure either in a land or a water highway; citing *Attorney General v. Booming Co.*, 34 Mich. 462, 472.

7. The purpose of navigation is not the subject of inquiry, but the fact of the capacity of the water for use in navigation; citing *Attorney General v. Woods*, 108 Mass. 436.

8. The doctrine of *City of Janesville v. Carpenter*, 77 Wis. 288, that a riparian proprietor may build to the thread of the stream if the river is not navigable in fact, and without excavation or improvement, is not the law of the State of Michigan, where it is settled law that natural highways by water may be improved, and no such theory is known as whether or not the river is navigable in fact as it existed in a state of nature; citing *Benjamin v. Improvement Co.*, 42 Mich. 628; *Improve-*

*ment Có. v. Lamport,* 49 Id. 442; *Improvement Co. v. Sands,* 53 Id. 593; *Sands v. Improvement Co.,* 123 U. S. 288.

9. At every session of the Legislature, commencing with 1855 and ending with 1889, except the sessions of 1861, 1862, and 1879, acts have been passed conferring upon municipal authorities power to establish dock and harbor lines. The acquiescence in this legislation has been universal, and must be taken to represent the opinion of the bar as well as the Legislature that this legislation is valid.

*Blair, Kingsley & Kleinhans,* for defendant, contended for the doctrine of the opinion.

MORSE, J. Grand river is one of the largest and most important inland streams of the State. It is a navigable river. It has been a water highway, upon which for many years logs and lumber have been floated from the pineries to the lake at Grand Haven, or to mills at various points upon the river bank. It has never been navigable for boats, except canoes and *bateaux,* above Lyons, and no steam-boats have been above the rapids at Grand Rapids for many years. Small steam-boats have run between the mouth and the city of Grand Rapids, and, with the aid of government appropriations, the river below the rapids at that city may be a water-way of great commercial utility; but above the rapids it has nearly served its usefulness as a navigable stream, except for small pleasure boats. The running of logs, lumber, and timber upon it is no longer of consequence, on account of the exhaustion of the forest supply of easy access to it and its tributaries. But it will ever be an important public stream, and its navigability for pleasure is as sacred in the eye of the law as its navigability for any other purpose. Its waters empty into Lake Michigan, and from thence flow into the St. Lawrence and to the sea; and under the ordinance of 1787, as well as the laws of our State, it must be regarded in the

89 MICH—7.

main as a public river and a common highway. It passes
through the city of Grand Rapids, dividing the place
into two parts, known as the "East" and "West" sides.
"The Rapids" take up within the city limits about two
miles of the river. The fall of the river bed is such
that the water, in the natural state of the river, flowed
with such velocity at a shallow depth, among numerous
rocks and boulders, over these rapids, as entirely to pre-
vent any navigation, except with canoes; and it was
always with great difficulty that one of these could be
poled up the stream. The character of the underlying
soil of the river here is rocky,—ledge rock between the
dam and Bridge street, and below that it is composed of
clay, boulders, and gravel, with ledges of rock occa-
sionally cropping out. There never has been a steam-
boat up or down these rapids but once, and then it had
to be drawn up by oxen, horses, and Indians. Logs
could never well be floated down without improvements
of the channel. The rapids, in a state of nature, served
no useful end in any kind or method of navigation.
Upon the east bank of the river, and below the dam,
extensive encroachments have been made by property-
owners, the first beginning of such encroachments dating
back many years, and almost from the first settlement of
the country; and made lands, and buildings upon them,
of the value of millions of dollars, are now located in
the old river bed upon that side.

The defendant, William T. Powers, in 1886, was the
owner of the west bank of the river from a point above
the present dam down to the point below the Grand
Rapids & Indiana Railroad bridge. The river near by
and within the city limits is spanned by eight bridges,
in the following order, from the north to the south:
The Detroit, Grand Haven & Milwaukee Railway bridge,

Leonard-street bridge, Sixth-street bridge, Bridge-street bridge, Pearl-street bridge, Grand Rapids & Indiana Railroad bridge, Fulton-street bridge, and Chicago & West Michigan Railway bridge. Five of these are maintained by the city. None of these, except the last, have any draw or openings for the passage of boats, and they are comparatively low bridges, with their supporting piers resting upon the bed of the river. In 1866 and 1867, Powers, in connection with other riparian owners, and with municipal and legislative consent, built a dam across the river. This dam is about 650 feet in length, and about 7 feet in height. A chute was put in to accommodate and facilitate the running of logs over the dam. Powers, at the same time, and in connection with this dam, built a canal along the line of his lands, upon the west side, which is about two-thirds of a mile in length. Part of it was built in the natural ground and part encroached upon the shallow waters of the original stream. The water of this canal is about nine feet deep, and varies in width from 50 to 100 feet. This improvement is worth many thousands of dollars.

In 1885 the Legislature, by Act No. 292 of the Local Laws of that year, amended the charter of Grand Rapids, conferred power and authority on the board of public works of the said city of Grand Rapids to establish dock and building lines on the shores and margin of Grand river within the corporate limits of said city, and in the waters and on the bed of said river along the said shores and margin, beyond which said lines, when so established, no dock, wharf, building, or structure of any kind, except public bridges, should be constructed in said river, or on or over the bed thereof, nor should the water be in any manner obstructed beyond said established lines; and authorized the common council of said city to enforce the power thus granted, relating to the establishment of

such lines, by ordinances duly enacted in that regard, and authorized said common council to impose appropriate penalties for that purpose within the limits prescribed by said charter of said city; and also provided that the ordinances or regulations of said common council, in relation to said dock-lines, might be enforced at the suit of said city by bill in equity. Afterwards, acting under this authority, the board of public works of said city, on the 3d day of May, 1886, established a dock and building line on the shores and margin of said Grand river within the corporate limits. On the 26th day of July, 1886, the common council of said city passed an ordinance entitled "An ordinance to prohibit and prevent the erection of buildings, docks, and other structures, and to prohibit and prevent the filling in of earth or other material, on the shores of Grand river, or obstructing the waters of Grand river, beyond the dock and building lines established by the board of public works," which was afterwards amended on the 30th day of January, 1888. This ordinance prohibited any encroachment upon the river shore or bed of any kind outside of the established dock-lines. These dock-lines were established by the board of public works without notice to Mr. Powers or any of the riparian owners along such lines; nor does it appear that they were consulted in regard to the location of such lines.

After the establishment of these dock-lines, Mr. Powers commenced the building of a wall in the stream. The wall was built of stone, and about four feet wide; and the defendant admits that he has constructed said wall to about the following dimensions:

"Commencing at or near the southerly end of the waste-weir of the West-side Canal, so-called, in said city, near the dam across said Grand river; thence extending south-easterly 66 feet, more or less, to a point just about 45 feet east of the said pretended dock and building line

so pretended to be established by the board of public works; thence extending southerly on a line which, if extended, would meet the public bridge over said Grand river at East Bridge street, in said city, at a point about thirty feet east of said pretended dock and building line."

He also admits that he intends to build said wall from the dam to Bridge street, and for his own purposes, and that the same is and will be outside the said dock-lines.

The city of Grand Rapids files its bill of complaint in the superior court of Grand Rapids, in chancery, basing its right for relief upon the legislative act aforesaid, and the action of the board of public works and the common council, under the authority given these bodies by such act, and claiming—

1. That the structure is unlawful by reason of such act and the proceedings under it.

2. That such wall is of great damage and detriment to the public use of the stream, as it would greatly narrow the natural channel, and impede the flow of the waters therein, and in times of high water would cause the waters of the river to be held back, and overflow and flood various portions of the city and its public streets, thereby causing great public and private damage, and occasion sickness to the inhabitants of the city by causing the ground thus overflowed to be damp and foul.

3. That it will interfere with the public use of the river, and its value for the purposes of commerce, for the floating of vessels, boats, rafts, and logs.

The bill prays that the defendant may be temporarily, and also permanently, enjoined from building the wall, or any other wall, outside of the said dock-lines, and that he be decreed to remove said stone wall by him constructed.

The defendant, answering, avers that, by virtue of his riparian rights, he owns the soil and bed of Grand river to the center thereof; that he has a right to make such use of the bed of said stream within his own ownership

as he sees fit, provided only that he does not interfere with the public use of said stream for the purposes of navigation, or with the rights of other riparian owners upon its banks; and denies that this wall so built, or as it is intended to be constructed, interferes at all with the public use of said river, or with the rights of other riparian owners; and further avers that the same, when completed, will be a benefit rather than a damage to the public and all concerned.

It is admitted that, under the settled law of this State, the defendant is the owner, by virtue of his riparian rights, of the soil of the river bed to the middle of the stream. It must also be conceded that he would have a right to build this wall, and to reclaim for his own use the land between it and the old west shore of the river, if such building of the wall and reclamation of the land did not interfere with the public right of navigation, or the private right of other owners of the river bank, had it not been for the act of the Legislature in question, and the subsequent proceedings of the authorities of the city of Grand Rapids under and by virtue of such act. The ordinance of 1787 cuts no particular figure in this case, because, under the decisions of the federal courts, as far as the general government is concerned, the rights of riparian owners on the streams mentioned or embraced by said ordinance must be determined according to the law of the state within which they are situated. *St. Louis v. Myers*, 113 U. S. 566 (5 Sup. Ct. Rep. 640); *Barney v. Keokuk*, 94 Id. 324; *Bridge Co. v. Hatch*, 125 Id. 1 (8 Sup. Ct. Rep. 811). Grand river must be treated the same as any other navigable stream under the laws of our State in the solution of this question, having regard, however, to its character as a stream considered at the point towards which this legislation is directed, and where the rights

involved are located. In the court below, the city seems
to have rested its case entirely upon the validity of this
dock-line legislation, and proceedings taken under it, and
no particular' effort was made to show that the wall was
or would be injurious to either public or private rights.
The dock-line, as established, cannot be sustained for
two reasons:

1. The persons owning the banks of the river in fee-
simple, and having absolute property in the river bed,
subject only to the public right of navigation, were not
notified of the proposed action of the board of public
works, and had no hearing upon the establishment of
these dock-lines. The fixing of these lines was an *ex
parte* and arbitrary proceeding, involving the rights of
property-owners, upon which they have never had a day
in court. Whatever may be held to be the authority of
the Legislature in respect to establishing such lines, it
cannot certainly be done without notice to property-own-
ers, and opportunity of a hearing accorded to them.
This would be despotism, and without due process of
law. No man's rights can be submitted, under a consti-
tutional government, to the discretion of any one with-
out notice or hearing. *Robison v. Miner*, 68 Mich. 549;
*In re Frazee*, 63 Id. 396.

2. The dock-line as established encroached upon the
shore-line of defendant, and the ordinance of the com-
mon council, therefore, prohibits him from building
upon and occupying his own land, which has never been
covered with water. The testimony of the city engineer,
Mr. Collar, a witness for the complainant, shows, on
cross-examination, that the dock-line on the west side of
the river in many places runs upon and along the east
edge of the top surface of Mr. Powers' canal bank for
some distance. At some points it is nine feet, and at

others more, west from the water-line of the river at ordinary stages, and at the south end of the canal the dock-line cuts off a strip of main-land of some feet in width, and a part of the main-land shore of the river. This dock-line as fixed runs through buildings, and cuts off a part of the Crescent Mills, which have been built more than 20 years, and passes through other buildings. It must be held that the Legislature has no power to extend dock-lines upon the natural shore or bank of the river, or to authorize the municipality to forbid the owners from building upon such shore or bank. This would be taking private property for public use without compensation, which is forbidden by our Constitution.

For these reasons alone the bill in this case must be dismissed, as there is nowhere in the evidence any showing that the building of the wall will be of any damage to the public use of the river for the purposes of navigation, or any injury in any way to the rights of the public or of private persons.

But the question of grave concern remains, to wit, what are the rights of the defendant as a riparian owner in this river, and what control can the municipality, under authority of the Legislature, lawfully exercise over such rights? And it seems to me desirable. that this question be settled, as it is conceded to be an open one, so far as the courts of this State are concerned, and one of great moment to the public as well as to private interests. In examining this question we must remember that the riparian proprietor in this State holds a different and more extended title to the soil under the water of a navigable stream than he does in many of the states of the Union. In this State he owns the soil to the middle of the stream, and has the right to use his land which is covered by water in any way he chooses, provided that

he does not seriously injure the public use of the stream, or obstruct or impede navigation, or damage other riparian owners along the stream above or below him.

"Any erection which can lawfully be made in the water within those lines belongs to the riparian estate. And the complete control of the use of such land covered with water is in the riparian owner, except as it is limited and qualified by such rights as belong to the public at large to the navigation, and such other use, if any, as appertains to the public over the water.  *  *  *

"In those waters whose beds are public, and not private, property, erections by riparian owners are unlawful, not because they are nuisances, in the proper sense of the term, but because they are encroachments upon the public domain, and they are as unauthorized as would be the erection of houses or barns, upon public land away from the water, by an adjoining land-holder. But where the ownership is private, and the public rights are simply easements or privileges upon it, the owner may do what he pleases, so long as he does not injuriously affect the public enjoyment. On land, where roads are laid out of a prescribed width, the law or the authorities having determined that width to be desirable, the right to encroach upon the way cannot be very extensive. But where the way exists in a water-course, whose boundaries are variable and laid down without human intervention, the extent to which private improvements are compatible with the public use must depend upon circumstances, and must always be a question of fact. The owner's use is lawful until shown to be unlawful. It is plain enough that there are streams which cannot safely be encroached upon at all, while there are others so considerable that they could not be appreciably injured by a very extensive system of dockage or other erections in their beds." *Ryan v. Brown,* 18 Mich. 196, 207.

See, further, as to the ownership and rights of the riparian owner in the bed of streams, *Lorman v. Benson,* 8 Mich. 18; *Rice v. Ruddiman,* 10 Id. 125; *Watson v. Peters,* 26 Id. 508; *Richardson v. Prentiss,* 48 Id. 88; *Bay City Gas Light Co. v. Industrial Works,* 28 Id. 182; *Maxwell v. Bridge Co.,* 41 Id. 466; *Pere Marquette Boom*

*Co. v. Adams,* 44 Id. 403; *Backus v. Detroit,* 49 Id. 110; *Fletcher v. Boom Co.,* 51 Id. 277; *Webber v. Boom Co.,* 62 Id. 626; *Turner v. Holland,* 65 Id. 453; *Attorney General v. Booming Co.,* 34 Id. 463.

It is contended by the counsel for the complainant that the Legislature of this State has the constitutional right to confer upon the proper authorities of the city of Grand Rapids the authority to establish dock and building lines on the shores and margin of Grand river, and that the defendant had no right to build a wall in the waters of the river beyond the dock and building line established by the board of public works; and to sustain this contention he cites the following: Cooley, Const. Lim. (5th ed.) p. § 740 (marg. p. 595); 1 Dill. Mun. Corp. (3d ed.) p. 136, 107; *Hart v. Mayor,* 3 Paige, 213, 9 Wend. 571; *Com. v. Alger,* 7 Cush. 53; *People v. Vanderbilt,* 26 N. Y. 287, 28 Id. 396, 398; *Attorney General v. Woods,* 108 Mass. 436; *Bay City Gas Light Co. v. Industrial Works,* 28 Mich. 182; *Attorney General v. Railroad Co.,* 118 Mass. 345; *State v. Sargent,* 45 Conn. 358.

Cooley says:

" Wharf-lines may also be established for the general good, even though they prevent the owners of water-fronts from building out on soil which constitutes private property." And in the same connection adds: "And the Legislature may prevent the removal of stones, gravel, or sand from the beach for the protection of harbors. This is said to be a just restraint of an injurious use of property which the Legislature have authority to impose." Cooley, Const. Lim. (6th ed.) p. 739.

This language is plainly used in reference to wharves and harbors upon navigable water, and for the purposes of navigation by boats and vessels.

Dillon says:

"The rights of riparian proprietors in respect to the

erection of wharves are subject to such reasonable limitations and restraints as the legislature may think it necessary and expedient to impose. Therefore it is competent for the legislature to pass acts establishing harbor and dock-lines, and to take away the rights of the proprietors to build wharves on their own land beyond the lines, even when such wharves would be no actual injury to navigation." 1 Dill. Mun. Corp. (3d ed.) § 107.

This language has also evidently the same application.

In *State v. Sargent*, 45 Conn. 358, the owner of the land took title only to high-water mark. The fee between high and low water mark was in the state in trust for the public. It was held that the owner of the shore might construct wharves upon the soil below high-water mark, but in so doing must conform to the regulations of the State; and it is said that the duty of protecting the paramount right of navigation rests upon the legislature, and they are to determine for themselves by what methods and instruments they will discharge it. It is further said that the enactment of laws restraining proprietors of the shore from extending wharves or other structures into navigable waters is not the exercise of eminent domain. The public do not appropriate or use any right of the land-owner in the soil of the shore. This is no doubt good law where the land-owner's possessions stop at high-water mark, but it does not apply to the case before us.

The New York cases cited also refer to cases where the land-owner had no fee in the land under water; *Hart v. Mayor* involving rights upon the banks of the Albany Basin, which was a work of the state, and created by it. In *People v. Vanderbilt* the matter in controversy was the construction of a pier in New York harbor.

The case of *Com. v. Alger*, 7 Cush. 53, deals with the establishment of harbor lines in Boston harbor, and where, under the colonial ordinance of 1647, the proprietors of uplands bounded on the sea have an estate in fee in the

adjoining flats above low-water mark, and within 100 rods of the upland, with full power to erect wharves and other buildings thereon, subject, however, to the reasonable use of other individual proprietors and of the public for the purposes of navigation, and subject, also, to such restraints and limitations of the proprietors' use of them as the legislature may see fit to impose for the preservation of public and private rights. It was held that—

"The legislature of this commonwealth has power to establish lines in the harbor of Boston, beyond which no wharf shall be extended or maintained, and to declare any wharf extended or maintained beyond such lines a public nuisance; and statutes establishing such lines take away the right of the proprietors of flats in the harbor beyond the lines to build wharves thereon, even when they would be no actual injury to navigation; and such statutes, although they provide for no compensation to such proprietors, are not unconstitutional, as taking private property and appropriating it to public uses without compensation, within the meaning of the declaration of rights, art. 10, nor as impairing the operation of the grant made by the colonial ordinance, and thus transgressing the prohibition of the Constitution of the United States, art. 1, § 10, against passing laws impairing the obligation of contracts. But such statutes do not affect the right to maintain wharves erected before their passage."

By examining the opinion in this case, it will be seen that the grants of land since the adoption of this ordinance, which vested, by virtue of it, an estate in fee in the land lying between high and low water mark, were also subject to the proviso that such estate should be used so as not to stop or hinder the passage of boats and vessels, etc., and subject to all such restraints and limitations of absolute dominion over it in its use and appropriation as other real estate is subject to for the security and benefit of other proprietors, and of the public, in the enjoyment of their rights. The court

justifies its opinion under the police power of the legislature,—the authority vested in that body to establish all manner of wholesome and reasonable laws, rules, and penalties, not repugnant to the constitution, as they shall. judge to be for the good of the commonwealth and the subjects of the same,—and holds that the legislation in question is not an appropriation of property to a public use,—

"But the restraint of an injurious private use by the owner, and is therefore not within the principle of property taken under the right of eminent domain."

This case is followed in the other Massachusetts cases cited.

The learned counsel also contends that language has been used in several of the opinions of our own Court recognizing the right of the Legislature to establish wharf and dock-lines, but admits that the question in this case is still an open one, so far as this Court is concerned. The cases in which this matter have been touched upon are:

1. *Lorman v. Benson,* 8 Mich. 18. In the course of the opinion Mr. Justice CAMPBELL (p. 32) said:

"It is urged that this ruling will interfere with the improvement of rivers, and disturb the title of islands. But these objections are not well taken. The public authorities can regulate water highways, as well as land highways, although the soil of neither belongs to the State."

2. *Rice v. Ruddiman,* 10 Mich. 126. Mr. Justice CHRISTIANCY in his opinion says, at page 141:

"These principles, when applied to Muskegon lake, can no more interfere with the public right of navigation than when applied to rivers. In both cases the ownership is equally qualified by, and subordinate to, the rights of the public. In fact, navigation is much more likely to be benefited than injured by the application

of these principles.    Wharves and other similar erections
are essential to the interests of navigation; and if the
bed of the lake to high or low water mark were vested
in the State, no private owner could extend a wharf one
foot from the water-line without becoming a trespasser,
and incurring the risk of losing his improvements,
though navigation might be aided, rather than injured,
by it; while, by admitting the riparian ownership as
above explained, individual enterprise is stimulated to
improvement, and the public interest is subserved.    The
public, through their proper authorities, have always the
right to restrain any encroachments which may be inju-
rious to the public right, and to compel the removal of
any obstruction or impediment, as well as to punish the
offender, to the same extent as if the bed of the lake
were vested in the State."

3. *Bay City Gas Light Co. v. Industrial Works*, 28 Mich.
182.   In this case Mr. Justice CAMPBELL says, at page
184:

"The right of docking out, so as to secure the full
benefit of the water-front, is limited by the rule that it
must not seriously impair the right of navigation.    In
order to prevent any dispute as to what wharfing will be
such an encroachment, it has been provided in some of
our city charters that the city may fix a dock-line, beyond
which such erections shall not extend.    In doing this
the authorities are supposed to consult the public con-
venience, and to draw the line in such manner as to
subserve this.    It is usual, and practically almost necessary,
to make the frontage thus defined follow straight lines
of considerable length, avoiding angles as much as possi-
ble, and paying no attention to the sinuosities of the
shore.    Such lines will not necessarily or usually be
exactly parallel with the shore or with the thread of the
stream.    They can have no bearing whatever upon the
determination of boundaries, and are meant to determine
at what line the depth of water will be found sufficient
to meet all the necessities of navigation.    So far as they
are valid, it is as limits reasonably and impartially
fixed, beyond which all are forbidden to wharf out, and
within which every person may lawfully improve his own
property.    But with the ownership of property the city
authorities have no concern."

4. *Lincoln v. Davis*, 53 Mich. 375. On page 390, Mr. Justice CAMPBELL says:

"There can be no doubt of the right of the State to forbid any erections within such parts of the water as are *strictly navigable*, and to regulate the distance beyond which no private erections can be maintained."

Whatever may be the power of the Legislature in waters "strictly navigable" to fix an arbitrary line beyond which riparian owners cannot go, or to delegate to a municipality that power, I am satisfied that no such right exists in the waters of Grand river at the rapids, or certainly in that part of the waters which are not now navigable for any purpose. The rights of the riparian owner, under our laws, are subject only to the public use for the purposes of navigation; and there is a manifest difference between public streams that can be used successfully for the running of boats and vessels for the purpose of commerce, and those which are only capable of being used for the floatage of lumber and logs in rafts or single pieces. The riparian owners are entitled to the beneficial and sole use of the latter streams, except for floatage; and when such streams have become unfitted for valuable public use, and have actually ceased to be used for public highways, there is no more reason for holding them to be public than in the case of a land highway which has been abandoned and is useless. See opinion of CAMPBELL, J., *Sterling v. Jackson,* 69 Mich. 510; *Grand Rapids Booming Co. v. Jarvis*, 30 Id. 308; *Middleton v. Booming Co.*, 27 Id. 533.

There is no pretense in the proofs in this case that this river in front of the land of the defendant has ever been, ever will be, or can be, used for the navigation of commercial boats and vessels, nor that the water between the existing or proposed wall of the defendant and his shore-line has been, will be, or can be used even for the

floating of logs or rafts. It has never been "strictly navigable" water. In order to get the logs and lumber that have gone over the chute in the dam down these rapids, it has been necessary for many years to clear out a channel in the center of the stream, and inclose such channel on each side with cribs and timbers, thus making an artificial canal, as it were, in the center of the stream for the purpose of floatage. This wall will have no appreciable effect upon this artificial channel, unless it be to deepen its waters, and thus aid navigation rather than to hinder it. This is the whole tendency of the proofs.

It is claimed by the counsel for complainant that the proposed occupation of the river bed by the defendant will be a purpresture, and therefore a public nuisance, and that, as such, the Legislature, or the city under authority from the Legislature, may abate it whether it interferes with navigation or not. A "purpresture" is defined by Chief Justice COOLEY in *Attorney General v. Booming Co.*, 34 Mich., at page 472, as "an inclosure by a private party of a part of that which belongs to, and ought to be open and free to the enjoyment of, the public at large;" and he also holds that an unauthorized inclosure of a part of a water highway is as much a public wrong as that of a land highway. But he also, in the same case, defines the character of the Muskegon river as a navigable stream at the point in controversy in that case, and says:

"Neither is it a navigable stream, * * * in the more popular sense of that term, for it is only a small stream, whose value to the public consists in the use which can be made of it for the purpose of floating logs and lumber."

Such is the navigability of the Grand river at the place in controversy here. He further says:

"The right of floatage is unquestionably a right which the State should guard and protect; but it is a serious mistake to assume that the private appropriation of a part of the bed of the river would necessarily be either a purpresture or a nuisance. The property taken in such a case is not public, but private, property, and the owner of the bank, who also presumably owns to the center of the stream, may maintain trespass or ejectment against the taker. If the owner make no complaint, the public can have neither right nor occasion for any, provided the navigable rights are not abridged. If they are, it is not very manifest how this can be a purpresture. The difference between the highway by land, with its definite limits to which the public right extends, whether the whole is used or not, and the highway for floatage in our small streams, where the public rights have no definite limitations of space except as practicability for use and the occasion for use may give variable limits, as the seasons and the needs of business and traffic may change, is so plain that the difference between an appropriation in the two cases needs only to be mentioned. It requires neither argument nor illustration. The one is a public grievance of some sort; but the other is no public grievance of any sort, unless the public use is unreasonably abridged or inconvenienced."

The police power of the Legislature in this State is not omnipotent. It cannot, under the guise of regulation, destroy property rights arbitrarily and without reason.[1] The Legislature can, without doubt, in public harbors, and perhaps in navigable streams, where boats and vessels can be and are used, limit the construction of wharves to the line of navigability; but it is doubtful if such erections could be stopped short of such lines, unless some good reason could be shown for such a regulation. *Attorney General v. Booming Co.*, 34 Mich. 472, 473. And "the extent to which private improvements are compatible with the public use must depend upon circumstances, *and must always be a question of fact.*"

---

[1] See *Whitney v. Township Board*, 71 Mich. 237.

*Ryan v. Brown,* 18 Mich. 209. The Legislature of Michigan cannot authorize a municipality to make that a purpresture or nuisance which is not so in fact, if, by so doing, the constitutional rights of any citizen in his person or property are destroyed or infringed. *Wreford v. People,* 14 Mich. 41; *Everett v. Marquette,* 53 Id. 450; *In re Frazee,* 63 Id. 396; *Robison v. Miner,* 68 Id. 556; *People v. Armstrong,* 73 Id. 288.

The power of the Legislature in the matter of harbor and dock-lines upon streams where the bank-owner's title in fee reaches to the bed of the river, subject to the public use for purposes of navigation, came before the Supreme Court of the United States in *Yates v. Milwaukee,* 10 Wall. 497. Yates built a wharf over the low water in the Milwaukee river the width of his lot, and 190 feet in length, to reach navigable water. The Legislature of Wisconsin had authorized the common council of Milwaukee to establish, by ordinance, dock and wharf lines on this river, and to restrain and prevent encroachments and obstructions therein, and to cause it to be dredged. The city by ordinance declared this wharf to be an obstruction to navigation and a nuisance, and ordered it abated. Yates refused to abate it. Thereupon the city contracted with a person to remove it, and Yates filed his bill to restrain such removal. There was no evidence to show that the wharf was an actual obstruction to navigation, or was in any other sense a nuisance. The Court, speaking through Mr. Justice Miller, said:

"We are of the opinion that the city of Milwaukee cannot, by creating a mere artificial and imaginary dock-line, hundreds of feet away from the navigated part of the river, and without making the river navigable up to that line, deprive riparian owners of the right to avail

themselves of the advantage of the navigable channel by building wharves and docks to it for that purpose."

It is also further said that the riparian right in the bed of the stream—

"Is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and, if necessary that it be taken for the public good, upon due compensation."

See, also, *Norfolk City v. Cooke*, 27 Grat. 430, where it is held that the soil under water of the riparian proprietor is not a mere license or privilege, but is property, —property in the soil up to the line of navigability, though covered with water.

An interesting case, and one in point, is *City of Janesville v. Carpenter*, 77 Wis. 288 (46 N. W. Rep. 128). The legislature of Wisconsin in 1887 passed an act "that it shall be unlawful and presumptively injurious * * * to persons and property to drive piles * * * in Rock river within the limits of the county of Rock, and the doing of any such act shall be enjoined at the suit of any resident tax-payer, without proof that any injury * * * has been or will be caused by reason of such act;" and further provided that such acts might be enjoined at the suit of any one having the use of the water-power of the river in said county, without other proof than that the act would cause the river to rise or set back to some extent at the place where the water used to operate his mill or factory is discharged into the river. This would seem to have been the exercise of the police power of the legislature declaring certain specific things nuisances *per se*. But the Wisconsin supreme court holds that such legislation is void, and in violation of the constitution, in that it deprives the riparian owner

of his property in the river without compensation and without due process of law. The court says:

" This is the first time that any legislature of any enlightened country ever attempted to create an action without any cause of action; to authorize a complaint to be made to a court when there is nothing to complain of; to compel the courts to enjoin the lawful use and enjoyment of one's own property, 'without proof that any injury or danger has been or will be caused by reason of such act.'"

The court holds as follows in regard to the right of the person sought to be enjoined by the city under this act:

" That Thomas Lappin, the owner in fee of this ground, has the right to use and enjoy it to the center of the river in any manner not injurious to others, and subject to the public right of navigation, has been too often decided by this court and other courts to be questioned. As a riparian owner of the land adjacent to the water, he owns the bed of the river *usque ad filum aquæ*, subject to the public easement, if it be navigable in fact, and with due regard to the rights of other riparian proprietors. He may construct docks, landing places, piers, and wharves out to navigable waters if the river is navigable in fact; and, if it is not so navigable, he may construct anything he pleases to the thread of the stream, unless it injures some other riparian proprietor, or those having the superior right to use the waters for hydraulic purposes. *Jones v. 'Pettibone*, 2 Wis. 308; *Arnold v. Elmore*, 16 Id. 509; *Yates v. Judd*, 18 Id. 118; *Walker v. Shepardson*, 4 Id. 486; *Improvement Co. v. Lyons*, 30 Id. 61; *Delaplaine v. Railway Co.*, 42 Id. 214; *Cohn v. Boom Co.*, 47 Id. 314; *Boom Co. v. Reilly*, 46 Id. 237; *Hazeltine v. Case*, Id. 391. Subject to these restrictions, he has the right to use his land under water the same as above water. It is his private property under the protection of the constitution, and it cannot be taken, or its value lessened or impaired, even for public use, without compensation, or without due process of law, and it cannot be taken at all for any one's private use."

This, in my opinion, is the title also that the defend-

ant Powers holds in the bed of Grand river, opposite his shore-line, and his rights are co-extensive with those given by the Wisconsin supreme court to Lappin; and that the law of this State is in complete accord and harmony with that of our sister state of Wisconsin in respect to riparian rights. See especially *Ryan v. Brown,* 18 Mich. 196; *Attorney General v. Booming Co.,* 34 Id. 462; *Sterling v. Jackson,* 69 Id. 510–512, opinion of CAMPBELL, J.; *Middleton v. Booming Co.,* 27 Id. 533 (ann. ed.), and notes; *Watson v. Peters,* 26 Id. 508 (ann. ed.), and cases cited in note 1; *Grand Rapids Booming Co. v. Jarvis,* 30 Id. 308; *Maxwell v. Bridge Co.,* 41 Id. 466.

I do not pass upon the right of the Legislature to empower the city of Grand Rapids to establish dock-lines within the limits of the navigable part of the river, if there is such navigable water, and to prevent any encroachments upon or obstructions within the water so outlined as navigable. It is not necessary to the determination of this case. But outside of the navigable water no dock-line can be drawn, and the property thereby taken for public use, without compensation to or consent of the riparian owners. Nor do I decide that the city may not make and enforce all needful and reasonable rules and regulations as to the public and private use of this river necessary to the public health of said city, or to prohibit any encroachment upon the river bed which will tend seriously to increase the danger of floods and the destruction of property thereby. The city saw fit in its proofs to rest upon the validity of the dock-lines. There is no showing that the building of this wall will be of the least detriment to the public health, or that it will have any tendency to increase the dangers arising from floods. The river is narrower below this wall, and made so by bridges of the

city's own construction and maintenance, than it will be at any place where the wall will be situated after it has been constructed as proposed by the defendant. The city engineer can see no reason, in his testimony, why the building of this wall will tend either to the creation of overflows, or to increase the floods that sometimes have existed from various causes in high water. I have not space to discuss the testimony, but it is wholly barren of any showing that this wall, which the defendant is building, and proposes to build, upon his own land, will interfere in the least with the public use of the river, the rights of any other riparian owner in the stream, or damage any public or private interest to any perceptible extent. It may be that such a showing can be made as would entitle the complainant to the relief asked, but it has not seriously been attempted by the proofs, presumably for the reason that the complainant supposed its case was completely made out by the law, by virtue of the legislative act, and the municipal proceedings under it.

The decree of the court below must be reversed, the bill dismissed, with costs of both courts, but without prejudice to any further action or proceeding, if cause can be shown for it as heretofore pointed out.

McGRATH, LONG, and GRANT, JJ., concurred. CHAMP-LIN, C. J., did not sit.