PIGORSH *v.* FAHNER

1. Navigable Waters—Lakes—Streams—Navigability—Statute.

Provisions of the inland lake and stream act apply only to navigable inland bodies of water with "navigable" being construed to mean any valuable boat or vessel navigation (PA 1965, No 291).

2. Navigable Waters—Natural Navigability—Riparian Rights.

The essence of the doctrine of riparian rights forbids any upper or lower riparian proprietor from disputing his riparian neighbor's passage by water when the stream or land is commonly enjoyable by all and has been made navigable by nature.

3. Navigable Waters—Navigability—Test.

A body of water may not be considered navigable merely because it is boatable or capable of being used for a particular purpose; the true test is whether the waters can be used by the public as thoroughfares or highways for purposes of commerce, trade and travel, affording a common passage for transportation and the usual modes of navigation.

4. Navigable Waters—Inland Lakes—Riparian Rights.

An inland lake, lacking inlets or outlets, and completely surrounded by plaintiffs' property, was a private, non-navigable body of water, subject to the exclusive use and possession of the riparian plaintiffs, and the trial court correctly enjoined non-riparians from using that lake.

Appeal from Montcalm, William R. Peterson, J. Submitted Division 3 June 4, 1969, at Grand Rapids.

References for Points in Headnotes
[1–4] 56 Am Jur, Waters § 177 *et seq.*
[2] 56 Am Jur, Waters § 207 *et seq.*
[4] 56 Am Jur, Waters § 178 *et seq.*

(Docket No. 5,602.)    Decided February 25, 1970.
Rehearing denied April 6, 1970.    Leave to appeal
granted June 19, 1970.    383 Mich 795.

Complaint by Walter G. Pigorsh, Ruth Pigorsh,
James H. McMullan and Doris G. McMullan against
Sheldon Fahner, August Bradley, Harry Carlson,
Ben Wall, the Township Board of Township of
Pierson and the Conservation Department of the
State of Michigan, an intervening defendant, to
enjoin public use of a road and lake located
on plaintiffs' property.    Judgment for plaintiffs.
Defendant Conservation Department appeals.    Affirmed.

*Boyles & Van Orden,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Nicholas V. Olds*
and *Jerome Maslowski,* Assistant Attorneys General, for defendant Conservation Department.

Before: Gillis, P. J., and R. B. Burns and V. J.
Brennan, JJ.

V. J. Brennan, J.    Wood lake is a small lake of
some 74 acres, situated off U.S. highway 131 in
Montcalm county.    It lacks inlets and outlets, and
is completely surrounded by the plaintiffs' lands—
the McMullans' to the north, the Pigorshes' to the
east, south and west.    On the north side of the lake,
an unplatted and undedicated, dirt road, 12 to 14
feet wide, runs approximately 1500 feet from the
highway on the east to a deadend behind the Mc-
Mullan house on the west, coming as close as 14 feet
to the water, depending on the water's fluctuation.
At the closest point between the lake and this road,
which is commonly called McMullan road, there is
a clearing or access strip 500 feet long.    Through the

years, and without seeking or gaining the express permission of the McMullans, friends and neighbors have traversed the road, parked their automobiles on the shoulder and strip, and have fished, boated and swum in the lake. In 1953, strangers began using the lake, and as their number increased, more and more boats were to be seen on the water, and more and more automobiles were found parked on the McMullans' land. Litter and debris were scattered about while derelict boats were left to rot in and around the lake. In question here is the plaintiffs' right to exclude the public from the waters of Wood lake.

In early 1966, the McMullans erected a wire fence along a line 25 feet south of the road's edge, thereby blocking access to the lake, but portions of the fence were promptly cut and removed by certain officials of Pierson township. Faced with the continuing presence of the public, the McMullans and Pigorshes commenced the present action to enjoin both the officials who had cut the fence and any unknown persons from trespassing on their lands and using Wood lake. In answering the claim of trespass, the individual defendants alleged that McMullan road touches the lake, and that it is a public roadway, having been traversed by the public for more than 10 years. While the suit was pending, the McMullans spread fill-dirt partly in the water and partly on the land along a line parallel to the fence. Upon learning of the fill, the Attorney General moved to intervene as a party defendant on the relation of the Department of Conservation, claiming that the fill was placed in violation of the permit requirement of PA 1965, No 291,[1] and adopting by reference the individual defendants' answer to the plaintiffs' complaint. The individual defendants subsequently

---

[1] MCLA § 281.731 et seq. (Stat Ann 1968 Rev § 11.451 et seq.)

amended their answer to include, under the heading
"affirmative defense," the claim of a prescriptive
right to walk over and across the plaintiffs' lands
to gain access to the lake. The right was said to
arise from the public's use of the land for more than
10 years. The Attorney General did not refer to
the amended answer in the pleadings he filed after
the court granted his motion to intervene.

At trial the court held that McMullan road was
private by the individual defendants' own admission,
since they had failed to answer written interroga-
tories wherein the plaintiffs asserted that the road
was private. The individual defendants were per-
mitted, however, to make a separate record showing
the nature and extent of the public's use of the lake
and land. The Attorney General did not offer any
proofs concerning the road and access strip, and
the court viewed his position as being procedurally
limited to the alleged violation of PA 291. After
thoroughly and thoughtfully examining the appli-
cable case law, the court concluded that Wood lake
is neither "navigable" within the meaning of PA
291 nor "navigable" for purposes of public recrea-
tion, dismissed the Attorney General's claim, and
granted the injunction sought by the plaintiffs.

Only the Attorney General appeals, contending
that the trial court was in error, that the lake is
subject to the provisions of PA 291, and that it is
open to the public for recreation. Lawful access
to the lake is gained, he alleges, either by McMullan
road alone, assuming the road is a public highway
by user with a statutory width of 66 feet,[2] or, if the

---

[2] MCLA § 221.20 (Stat Ann 1958 Rev § 9.21). The plaintiffs op-
pose any extension of the road beyond 14 feet should this Court hold
that it is a highway by user, and cite *Eager* v. *State Highway Com-
missioner* (1965), 376 Mich 148, where a highway by user was said to
be only as wide as its traveled portion since application of the statute
to a greater width up to 66 feet is unconstitutional as a taking of
property without just compensation.

road is not of the statutory width and therefore does not touch the lake as a matter of law, by Mc-Mullan road together with a prescriptive easement, in favor of the public, over the access strip. The plaintiffs contend, on the other hand, that the Attorney General, assuming he has standing at all, may not assert the claims of public highway by user and prescriptive easement, since he did not expressly assert them as affirmative defenses below.[3] Whatever the merits of this procedural question, this Court need not decide it, for, as we shall see later, even if the public may lawfully gain access over the road and strip, the public may not use Wood lake for recreation.

At one time, logs belonging to the plaintiffs' predecessors in title were floated across the lake to a timber mill located on riparian land. The lake today is capable of floating logs. Because of this capacity, the Attorney General argues that the lake is "navigable" both within the meaning of PA 291 and for purposes of public recreation, and refers us to *Moore* v. *Sanborne* (1853), 2 Mich 520, where a river with a similar capacity was held to be "navigable." More broadly, the Attorney General would have the "navigability," and hence state regulation and public use, of a body of water depend in all cases on its suitability for the use in question. Since Wood lake is suitable for recreation, the public may use it for recreation.

PA 291 is described in part in its preamble as an "Act to protect riparian rights and the public trust in navigable inland lakes and streams, including the St. Mary's, St. Clair and Detroit rivers, and to regulate the uses thereof." "Lake or stream" is defined

---

[3] The plaintiffs also oppose the latter claim on its merits, contending that it is defective in the first place because a prescriptive easement of access in favor of the public, so far as either party's research discloses, is unknown to the law of this state.

by section 2(a) of the act as "any navigable inland
lake or stream wholly or partly within this state
including the St. Mary's, St. Clair and Detroit rivers,
but excluding the Great Lakes and the bays and
harbors thereof." It seems to us that if the term
"navigable" as it is used in the act contemplates the
broadened meaning urged by the Attorney General,
its use as a restrictive modifier is pointless, since
virtually every body of water in the state is suitable
for some kind of recreation. Its use is equally
pointless if it is construed to mean "capable of
floating logs," since most bodies of water also have
this capacity. It is true of course that the river in
*Moore, supra,* was characterized as "navigable" and
that it was capable of floating logs. But the author-
ization sought there was not for just the floatation
of logs, but for the *transportation* of logs, and then
by persons other than the owners of the bottom land
over which passage was made, a use recognized to
be a public necessity. No one here seeks to float
logs, and, more importantly, it is clear that Wood
lake is unsuited for the transportation of logs except
by its riparian owners. In conclusion, the meanings
urged by the Attorney General, if accepted, would
extend the reach of PA 291 beyond the limit allowed
by a fair reading. We think the term instead con-
templates any valuable boat or vessel navigation,
the meaning associated with the term at the common
law of this state, *Shepard* v. *Gates* (1883), 50 Mich
495, and recently given to it as it appears in the
inland lake level act of 1961,[4] *In re Martiny Lakes
Project* (1968), 381 Mich 180. Since Wood lake is
not suited for any valuable boat or vessel naviga-
tion, it is not subject to the provisions of PA 291.

Although the Conservation Department is without
standing to complain of a landfill, there remains the

---

[4] MCLA § 281.61 *et seq.* (Stat Ann 1968 Rev § 11.300 *et seq.*)

question whether the public may use Wood lake for recreation. The cases cited by the Attorney General do not support his equation of a capacity for recreational use with a public right of recreational use. In *Kerley* v. *Wolfe* (1957), 349 Mich 350, an owner of riparian land on a lake sought to enjoin another riparian from fencing off the shallow waters fronting the latter's land. The waters were suitable for boating and fishing, and the Court did note that since they were navigable in fact they were navigable in law. But the person who sought to use the shallow waters was a riparian owner, not a member of the public. As the Court said in affirming the injunction, the right sustained "is the doctrine of riparian rights, the essence of which is that no upper or lower proprietor may dispute passage by water of his riparial neighbor when the stream or lake commonly enjoyed by all has been made navigable in fact by nature." *Collins* v. *Gerhardt* (1926), 237 Mich 38, and *Attorney General, ex rel. Director of Conservation,* v. *Taggart* (1943), 306 Mich 432, involve public fishing in rivers fit for the transportation of logs. In *Collins* the owner of riparian land on both sides of a stretch of the Pine river brought a trespass action against an angler who had climbed a wire fence strung from bank to bank. In *Taggart* a fisherman sought to enjoin the defendant riparians from maintaining a seven-foot hole in the bed of the river. In both cases the Supreme Court upheld a right in the public to fish, arguing that since the rivers were fit for floating logs, they were navigable in law under *Moore* v. *Sanborne, supra,* and therefore could be used by the public for fishing. In *Taggart,* p 443, however, the Court expressly limited the reach of the decisions:

"The instant case does not in any way affect very small trout streams on private property which have

not been used by the public for logging or for boating; *Burroughs* v. *Whitwam,* 59 Mich 279; nor does it cover private lakes and ponds owned by the abutting property owners. *As to such bodies of water the riparian owner has complete control."* (Emphasis added.)

In *Cass County Park Trustees* v. *Wendt* (1960), 361 Mich 247, the last case that is at all favorable to the Attorney General's position, the plaintiffs sought to enjoin the owners of riparian land from fencing off Eagle lake at a point where it touched a public highway (one gained through statutory user). Although the Court did affirm the grant of an injunction protecting the public right of recreational use, the case is of little precedential value here since the Court characterized the lake as "navigable" without mentioning its size or whether it had inlets or outlets.

The cases cited by the plaintiffs, on the other hand, clearly reject the equation of a capacity for recreational use alone with "navigability" and public use, and they do so even where the public has lawful access to the waters in question. A right of exclusive possession is said to rest in the riparian owners of small lakes and ponds. In *Winans* v. *Willetts* (1917), 197 Mich 512, the Court upheld an injunction issued at the instance of the sole riparian owner of a 100-acre lake that was ultimately connected to Lake Erie. The defendant fisherman gained access from a public highway touching the lake. Several fishermen were likewise enjoined in *Putnam* v. *Kinney* (1929), 248 Mich 410, from cutting a fence and fishing on a 112-acre lake that was without inlet or outlet and was completely surrounded by the plaintiffs' lands. The fence ran along a line where a public highway by user touched the water. The Court said that *Winans* was controlling and quoted

approvingly from *Giddings* v. *Rogalewski* (1916), 192 Mich 319, 324:

"The grounds upon which it is contended this lake is 'navigable waters' are that it is boatable, and that fish frequenting it can pass in and out by an underground channel connecting with other waters. Both facts, if shown, fail to furnish the test of navigability. The true test is whether the waters under consideration are capable of being used by the public as thoroughfares or highways for purposes of commerce, trade, and travel—of affording a common passage for transportation and travel by the usual and ordinary modes of navigation."

In light of these cases, we conclude that Wood lake, a 74-acre lake lacking inlets or outlets, is non-navigable, private, and subject to the exclusive use and possession of its riparian owners. The trial court was correct in enjoining the individual defendants from using its waters.

As mentioned above, we find it unnecessary to resolve either the procedural question involving the claims of public highway and prescriptive easement, or the merits of these claims, since the lake may not be used for recreation even if the public does have lawful access. Implicit here is the assumption that the state and the public are interested in McMullan road only as a means of reaching Wood lake. There exists, however, the possibility that members of the public will use the road for some reason unrelated to the gaining of access to the lake, and although public use of the road would be in violation of the injunction issued below, a question unresolved by this appeal would again be presented. Despite the present opportunity to resolve this question once and for all, we choose not to do so. The plaintiffs clearly do not want McMullan road to be public. More importantly, the claim of public highway is

only incidental to the state's real objective—recreational use of Wood lake. However, this objective is now unattainable. We doubt that the state would want the burden of the road without the benefit of the lake.

The order granting an injunction in favor of the plaintiffs is affirmed.

All concurred.