NICHOLAS v McDANIEL

DEPARTMENT OF NATURAL RESOURCES v NICHOLAS

Docket Nos. 77-5203, 77-5204. Submitted December 11, 1978, at Lansing.—Decided January 16, 1979. Leave to appeal applied for.

William and Caroline Nicholas, husband and wife, built a footbridge on their property across Burgess Creek in 1970, thus preventing passage through the creek. Burgess Lake has no inlet and only the Burgess Creek outlet which flows 800 feet into another lake, through its outlet into a pond, and thereafter past a waterwheel, through a culvert and other creeks, lakes and rivers until it ultimately empties into the Grand River. The property surrounding Burgess Lake is private with approximately 50 riparian owners including Russell E. McDaniel and Richard Rademacher. The Nicholases own frontage on Burgess Lake and the land on both sides of Burgess Creek where the footbridge was constructed. On August 1, 1975, the Nicholases brought an action in Montcalm Circuit Court, alleging that the McDaniel and Rademacher children had trespassed on Burgess Creek and requested a restraining order to prevent further trespass. The restraining order was granted, Leo B. Bebeau, J., and plaintiffs then sought temporary and permanent injunctions. On October 14, 1975, the State of Michigan filed a complaint against the Nicholases alleging that the bridge deprived riparian owners on Burgess Lake of their right to navigate Burgess Creek and praying that Burgess Creek be declared navigable. By stipulation of the parties, the Nicholases suit against McDaniel and Rademacher for trespass was consolidated with the state suit against the Nicholases. Montcalm

REFERENCES FOR POINTS IN HEADNOTES
[1] 78 Am Jur 2d, Waters §§ 2, 66.
[2] 78 Am Jur 2d, Waters § 87.
[3] 78 Am Jur 2d, Waters §§ 44, 54.
    Rights of fishing, boating, or the like in inland lakes. 57 ALR2d 569.
[4] 78 Am Jur 2d, Waters § 44.
[5] 78 Am Jur 2d, Waters § 71.
[6, 7] 78 Am Jur 2d, Waters §§ 86-90.

Circuit Court, Charles W. Simon, Jr., J., declared Burgess Creek to be navigable and ordered the Nicholases to cease and desist from blocking access to it. The Nicholases appeal. *Held:*

Riparian owners are entitled to the exclusive possession of a lake and its outlet creek only where both are completely surrounded by their land. Burgess Creek is a useful passageway for persons wishing to travel by boat or canoe from Burgess Lake into lower lakes, ponds, creeks and rivers. The Nicholases do not own all of the land surrounding this chain of lakes and streams; therefore, Burgess Creek is navigable and the Nicholases should be prohibited from obstructing free passage by riparian owners located on Burgess Lake.

Affirmed.

1. NAVIGABLE WATERS — STRICT NAVIGABILITY — QUALIFIED NAVIGABILITY — FLOATAGE AND FISHING.

Michigan recognizes two types of navigability: (1) strict navigability which includes those waters capable of being used for valuable boat or vessel navigation, and (2) qualified navigability, consisting of streams which are incapable of year around navigation but can be used to float logs to mills during the spring; a stream navigable in either the strict or qualified sense is open to the public for floatage and fishing.

2. NAVIGABLE WATERS — PUBLIC USE — RIGHTS OF PUBLIC — RECREATIONAL USE.

Members of the public have the right to navigate and to exercise the incidents of navigation in a lawful manner at any point below high water mark on waters which are capable of being navigated by oar or motor propelled small craft; this is the recreational use test for navigable waters.

3. WATERS AND WATER COURSES — INLAND LAKES — RIPARIAN OWNERS — EXCLUSIVE POSSESSION.

Riparian owners are entitled to the exclusive possession of a lake where the lake has no inlets or outlets and is completely surrounded by their land.

4. WATERS AND WATER COURSES — PRIVATE LAKES — NAVIGABLE WATERS — INLETS AND OUTLETS.

A lake which has no inlet and only one outlet and where all the land surrounding the lake and the land on both sides of the outlet is owned by one owner is a private lake, even though it is possible to float a boat up the outlet creek into the lake.

5. NAVIGABLE WATERS — WATERS AND WATER COURSES — LAKES — CREEKS — NAVIGABILITY.

The navigability of a lake is not necessarily determined by the navigability of its outlet creek; the reverse is also true—the navigability of a creek is not necessarily determined by the navigability of the lake which is its source.

6. WATERS AND WATER COURSES — NAVIGABLE WATERS — LAKES — CREEKS — PRIVATE OWNERSHIP — PUBLIC RIGHTS.

Riparian owners have the right to the reasonable use of the entire surface of a lake; however, this does not confer upon them the right to use an outlet creek because any such right is dependent upon their status as members of the public; each must be viewed separately where the property surrounding both the lake and its outlet creek are not in the hands of a single owner.

7. NAVIGABLE WATERS — LAKES — CREEKS — PRIVATE OWNERSHIP — PUBLIC RIGHTS.

An outlet creek from a lake is navigable and public where evidence shows that the creek is valuable for travel by boat or canoe between property not owned by the same owner.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Randall Whitworth,* Assistants Attorney General, for Department of Natural Resources.

William C. Nicholas, *in propria persona.*

*Fraser, Trebilcock, Davis & Foster* (by *Donald A. Hines),* for defendants.

Before: R. B. BURNS, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

J. H. GILLIS, J. William and Caroline Nicholas (hereinafter referred to as plaintiffs) appeal from a declaratory judgment and permanent injunctive order dismissing the Nicholas claim for trespass against Russell McDaniel and Richard Rademacher (hereinafter referred to as defendants),

declaring Burgess Creek to be navigable, and prohibiting plaintiffs from obstructing free passage through same.

The facts relevant to the disposition of this appeal are as follows. Burgess Lake has no inlet and only the outlet of Burgess Creek. The latter is approximately 800 feet long and empties into a 35-acre body of water known as Dogfish or Pine Lake. The outlet from this lake, Dogfish Creek, leads to Salt Springs (also called Mill Pond) which covers 3 to 5 acres. The outlet from this pond leads past a waterwheel, through a culvert under Baker Road, and ultimately into Wabasis Creek, Morgan Lake, the Flat River and the Grand River.

The property surrounding Burgess Lake is private. There are approximately 50 riparian owners with cottages on the lake including the defendants in this case.

Plaintiffs' property consists of 120 acres and includes land fronting on Burgess Lake, the land through which Burgess Creek flows, seven-eighths of the property surrounding Dogfish Lake and the land on both sides of Dogfish Creek to a point approximately halfway between Dogfish Lake and Salt Springs.

In the fall of 1970 plaintiffs built a footbridge on their property across Burgess Creek. This prevented passage through the creek, although the evidence indicates that some people continued to use the creek by dragging a boat across the bridge.

Plaintiffs filed suit on August 1, 1975, alleging that defendants' children had trespassed on Burgess Creek and requesting a restraining order to prevent further trespass. The restraining order was granted and plaintiffs then sought temporary and permanent injunctions.

On October 14, 1975, the State of Michigan filed

a complaint against plaintiffs alleging that the bridge deprived the riparian owners on Burgess Lake of their right to navigate Burgess Creek and praying that Burgess Creek be declared navigable.

Pursuant to the parties' stipulation plaintiffs' suit against defendants for trespass was consolidated with the state suit against plaintiffs.

A nonjury trial resulted in a decision declaring Burgess Creek to be navigable and ordering plaintiffs to cease and desist from blocking access to it.

Michigan recognizes two types of navigability. Originally only those waters which were capable of being used for "valuable boat or vessel navigation" were considered navigable. When the great forests of this state were being felled many streams which were incapable of year around navigation were used to float logs to mills during the spring. Streams used for the latter purpose are sometimes referred to as navigable in the qualified sense. *In re Martiny Lakes Project,* 381 Mich 180; 160 NW2d 909 (1968).[1] A stream navigable in either the strict or qualified sense is open to the public for floatage and fishing. *Attorney General ex rel Director of Conservation v Taggart,* 306 Mich 432, 442; 11 NW2d 193 (1943).

Recently another panel of this Court set forth a "recreational use" test for determining the issue of navigability. In *Attorney General ex rel Director of the Department of Natural Resources v Hallden,* 51 Mich App 176, 189-191; 214 NW2d 856 (1974), the Court stated:

---

[1] "That there is a recognized distinction between the status of small streams which *by the common law* belong to the public for the limited purposes of flotation and fishing, and that of larger streams which are navigable 'in the more enlarged meaning of the term,' admits now of no doubt." *In re Martiny Lakes Project,* 381 Mich 180, 192; 160 NW2d 909 (1968).

See also *Grand Rapids v Powers,* 89 Mich 94, 111; 50 NW 661 . (1891), Bartke, *Navigability in Michigan in Retrospect and Prospect,* 16 Wayne L Rev 409, 412-419 (1970).

"We therefore hold that members of the public have the right to navigate and to exercise the incidents of navigation in a lawful manner at any point below high water mark on waters of this state which are capable of being navigated by oar or motor propelled small craft."

In the instant case the evidence indicates that it is possible to travel the entire stretch of water between Burgess Lake and Baker Road by canoe. In addition, Burgess Creek has been traversed by a number of people in various type boats ranging up to a 14-foot speed boat. In the latter case a motor was used the entire way except at a few points when crossing sunken trees.

Applying this evidence to the test announced in *Hallden, supra,* the trial court found that Burgess Creek was navigable.

This panel of the Court rejected the recreational use test in *Pigorsh v Fahner,* 22 Mich App 108; 177 NW2d 466 (1970), *aff'd* 386 Mich 508; 194 NW2d 343 (1972). However, in that case the lake in question had no inlets or outlets and was completely surrounded by the plaintiffs' land. We held that the riparian owners were entitled to exclusive possession of the lake.

Plaintiffs cite *Michigan Conference Ass'n of Seventh-Day Adventists v Comm of Natural Resources,* 70 Mich App 85; 245 NW2d 412 (1976), in support of their position. That case involved Shellenbarger Lake, which had no inlet and only one outlet. All of the property surrounding the lake was owned by the plaintiff. The Court held that the lake was private even though it was possible to float a boat up the creek into the lake. The Court went on to state that since the land on both sides of the outlet creek was owned by the plaintiff it was private.

The rationale behind *Pigorsh,* the Shellenbarger Lake case as well as the other "dead-end" or

detached lake cases[2] is that these lakes are not useful for travel or transportation. In those cases the land surrounding each lake was owned by one or at most a few people who were seeking to exclude all others. Since the lakes led nowhere except to the plaintiffs' land they were certainly not useful as highways or thoroughfares.

The stretch of water under consideration in this case is not a dead-end lake. Rather, it is a useful passageway for persons wishing to travel from Burgess Lake to Dogfish Lake, Salt Springs and Baker Road. Plaintiffs do not own all of the land surrounding this chain of lakes and streams.

Plaintiffs argue, nonetheless, that Burgess Lake is a dead-end lake with no public access and, hence, both the lake and creek are private. While there is some merit to this reasoning we do not think that it has application to this case.

First of all, whether Burgess Lake is navigable is not at issue. Secondly, the navigability of a lake is not necessarily determined by the navigability of its outlet creek. *Michigan Conference of Seventh-Day Adventists, supra,* at 88. We conclude that the reverse is also true—the navigability of a creek is not necessarily determined by the navigability of the lake which is its source.

Defendants in this case own land on Burgess Lake. As riparian owners they have the right to the reasonable use of the entire surface of the lake. *Burt v Munger,* 314 Mich 659; 23 NW2d 117 (1946). However, defendants' status as riparian owners on the lake does not confer upon them the right to use the creek.[3] Any such right is depen-

---

[2] *Putnam v Kinney,* 248 Mich 410; 227 NW 741 (1929), *Winans v Willetts,* 197 Mich 512; 163 NW 993 (1917), *Giddings v Rogalewski,* 192 Mich 319; 158 NW 951 (1916).

[3] This is not to say that defendants have no rights with respect to the outlet. If plaintiffs dammed the creek, defendants would be

dent upon their status as members of the public.

Therefore, we think that the reasoning of the dead-end lake cases is of limited applicability. Where, as in the instant case, the property surrounding both the lake and its outlet creek are not in the hands of a single owner each must be viewed separately.

The evidence shows that Burgess Creek is valuable for travel by boat or canoe between property not owned by plaintiffs on Burgess Lake and property not owned by plaintiffs on Dogfish Lake, Mill Pond and eventually Baker Road. We, therefore, conclude that the trial court was correct in finding it to be navigable.

Affirmed. Costs to appellees.

---

entitled to an injunction to return the water of the lake to its natural level. *Krieg v Kaufman,* 206 Mich 622; 173 NW 338 (1919). However, it would appear that unless the stream is held to be navigable, defendants would have no right to use it for transportation. See *Lepire v Klenk,* 180 Mich 481; 147 NW 503 (1914).