## William Wreford v. The People.

*Slaughter houses. Nuisance.* Where the Common Council was authorized to compel the owners and occupants of slaughter houses, &c., to cleanse and abate whenever necessary for the health, &c., of the inhabitants of the city; *held,* that such power could only be exercised in abating legal nuisances. It could not, and does not empower the Council to interfere with that which is not a nuisance in fact.

The Council have no power to prohibit slaughtering animals upon one's premises, unless the building is devoted to that business.

*Retrospective law. Regulations.* When it appeared that the building for a slaughter house was used, and fitted up before the ordinance was adopted; *held,* that as the charter only authorized the Council to prohibit the "location or construction" of buildings for slaughter houses, &c., it had no right to put an end to any existing business· of the kind so long as it was not a nuisance in fact, but it was further held that reasonable regulations might be made concerning them.

*Heard July* 10th. *Decided November* 13th.

Error to Recorder's Court.

Wreford was convicted in the Recorder's Court in and for the City of Detroit, under a complaint for violating an ordinance of said city, prohibiting the slaughtering of " any cattle, sheep, swine or calves in any building or enclosure on either side of Jefferson avenue, Woodward avenue and Fort street west, or within one block of each· of said avenues or streets."

The conviction, as appears by the record, was had upon a stipulation of facts, as follows, to wit:

" RECORDER'S COURT OF THE CITY OF DETROIT.

" *The People v. William Wreford.*

" For the purpose of the trial of this case, the facts are admitted and stipulated to be as follows:

" 1. The ordinance upon which the complaint was based was adopted December 27th, 1864, and is in words and figures, as follows, to wit:

" AN ORDINANCE RELATIVE TO SLAUGHTER HOUSES.

" *It is hereby ordained by the Common Council of the City of Detroit :*

" SEC. 1. No person shall slaughter or cause to be slaugh-

14 MICH.—F.

tered, in any building or enclosure on either side of Jefferson avenue, Woodward avenue and Fort street west, or within one block of each of said avenues or said street, any cattle, sheep, swine or calves.

"SEC. 2. Any violation of the provisions of this ordinance shall be punished by a fine not to exceed three hundred dollars, and costs, and in the imposition of any fine and costs, the Court may make a further sentence that the offender may be committed to the Detroit House of Correction or County Jail until such fine and costs be paid: *Provided, however,* That the term of such imprisonment shall not exceed the period of six months.

"SEC. 3. This ordinance shall take immediate effect.

"Approved December 27th, 1864.

" 2. That the streets therein named, to wit : Jefferson avenue, Woodward avenue and Fort street west, are not and were not, at the time of the adoption of said ordinance, except certain portions of Jefferson avenue and Woodward avenue occupied for business purposes, more closely built up or densely populated than many other streets in said city.

" 3. Defendant did, at the time and place alleged in said complaint, slaughter certain calves.

" 4. That said calves were so slaughtered upon premises and in a building fitted up by said defendant for a slaughter house, and occupied and used by him as a place for slaughtering calves and other animals, for a long time prior to and at the time of the adoption of said ordinance.

" 5. That the portion of Jefferson avenue, in the vicinity of which said slaughter house is located, is not as densely populated as many other streets in said city not mentioned in said ordinance.

" WILLIAM GRAY, *City Counselor.*

" NEWBERRY & POND, *Attorneys for Def't.*"

*Newberry & Pond* for plaintiff in error.

1. To be valid, an ordinance or by-law must be,

*a.* Strictly within the authority conferred on the corporation by its charter. *Mayor of Rochester v. Rood, Hill and Denio*, 146.

*b.* Must be a reasonable exercise of such authority. *Angell and Ames on Corp.*, 334 ; *Kennebec and R. R. Co., v. Kendal*, 31 *Me.* 470 ; *Dunham v. Trustees*, 5 *Cow.* 462 ; *Austin v. Murray*, 16 *Pick.* 121.

*c.* And whether so reasonable or not, is a matter of law for the Court. *Angell and Ames on Corp.* § 357 ; *Commonwealth v. Worcester*, 3 *Pick.* 462 ; *Austin v. Murray*, 16 *Pick.* 121 ; *Commonwealth v. Insurance Co.* 12 *Penn. St.* 318 ; *Kep v. City of Paterson*, 26 *N. J.* 298.

2. The ordinance in question is not authorized by any provision in the charter of said city.

It would seem to be intended to be based upon subdivision 33 of section 21, Chapter V of said Charter, *Laws of* 1857, *p.* 101.

This section authorizes the Common Council " to prohibit and prevent within certain limits in said city to be determined by the Common Council the location or construction of  *  *  slaughter houses and yards, butcher shops," &c., &c.

*a.* It is clear, we think, that this provision is aimed solely at prohibiting slaughtering or butchering as *a business* within limits to be fixed, &c. Whilst the ordinance in question seeks to prohibit under any and all circumstances the slaughtering of any animals within the limits fixed.

Under this subdivision 33, we submit that it is not competent for the Common Council to prohibit, by an ordinance, arbitrarily and without regard to whether or not the same is a nuisance, the further continuance of a slaughter house or butcher shop existing prior to and at the time of the passage of the ordinance.

The language is the same as used in subdivision 35, same

section, which authorizes the establishment of fire limits in said city. And it will not, we think, be contended that under the latter section the Common Council could, by an ordinance, prohibit the further continuance of a wooden building existing prior to the ordinance.

But the ordinance in question indirectly does this very thing.

It does not, it is true, in terms prohibit the further continuance of slaughter houses and butcher shops existing within the limits prescribed at the time of its passage, but indirectly it does so by prohibiting the slaughtering of any animal within such houses or shops.

3. The ordinance is an unreasonable exercise of the authority supposed to be conferred by the charter in this, to wit:

That it fixes the limit of the prohibition arbitrarily, and with an evident intent to favor certain localities or streets at the expense of others equally entitled to protection from the supposed annoyances of the business prohibited.

Evidently it was not adopted in good faith to protect the welfare or comfort of the inhabitants of the city generally.

*Wm. Gray* and *Levi Bishop* for People.

The Common Council of Detroit had power under the city charter to pass the ordinance in question.

They had power to prohibit and prevent, within certain limits of the city, to be determined by the Common Council, slaughter houses and yards, butchering shops, &c., and all establishments where nauseous, offensive or unwholesome business might be carried on, with a view to the health and safety of the inhabitants of said city, and to prevent such establishments becoming nuisances. *Charter ; S. L.*, 1857, *p.* 101 § 33*d*.

The authority here conferred is not confined to " the location and construction of buildings to be used " as slaughter houses, butchering shops, and the like. The language is,

"buildings for *storing*," &c., but we should hardly think of *storing* powder factories, tanneries, distilleries, &c. The language is, further, "buildings for the *manufacture* of turpentine," &c., but we should not think of *manufacturing* slaughter houses, *yards, butchering shops*, and the like. Again, the statute speaks of "*establishments* for straining or rendering lard," &c., and "all other establishments," &c. And the words, "all such buildings, factories, *shops*, and establishments, *now* and hereafter to be constructed," clearly indicate that power was given to prohibit the *offensive thing*, and not the building where it might exist.

It makes no difference how closely or otherwise the parts of streets named in the ordinance may be occupied as residences or for business, for the charter is clear that the limits in which the prohibition is to operate are to be determined by the Common Council. This power and discretion of the Council will not be controlled. *S. L.* 1857, *p.* 101.

The Legislature had authority to confer upon the Common Council the power which was exercised in passsing the ordinance in question. *Welch v. Stowell*, 2 *Doug. Mich.* 332, 340.

The ordinance on which the prosecution is based, is in no sense *ex post facto*. It is not the *building* which is forbidden and complained of, but the slaughtering of calves in a forbidden place. The building is not the nuisance, but it is the unlawful use of the building which constitutes the violation of law.

It is believed to be a doctrine wholly inadmissible, that because a building has been of long standing and use in a certain way, that therefore it is beyond the control of law, and may be used as a nuisance so long as shall suit the pleasure or convenience of the proprietor.

The law is otherwise; for to continue a nuisance after it is prohibited by law, is an offense, though it was not a nuisance when first committed. *Penoyer v. Saginaw*, 8 *Mich.* 534.

In *People v. Jackson*, the defendant remained passive and did nothing, after the obstruction which he had created ori-

ginally had been prohibited by a city ordinance. The court does not decide the point whether the ordinance was *ex post facto*, but Manning, J., declares unequivocally that *to continue* such an obstruction, even by leaving it alone, was illegal, and that the ordinance was not *ex post facto*. 9 *Mich.* 111, 122, 131; *Vedder v. Vedder*, 1 *Denio*, 259; *Brown v. R. R. Co.* 2 *Kernan*, 492; *State v. Wilkinson*, 16 *Pick.* 175.

In the case of *Jackson*, the obstruction, which was that of an alleged alley, was simply allowed to remain, without any new act on the part of the defendant.

The case at bar is much stronger against the defendant. The thing complained of here is slaughtering calves, where the defendant is an actor in each act of slaughtering, and where each act is a distinct and substantive offense.


CAMPBELL J.

Wreford was complained of and convicted in the Recorder's Court for violating an ordinance of the City of Detroit, which declares that no person shall slaughter or cause to be slaughtered in any building or enclosure, on or within one block of Jefferson or Woodward avenues, or Fort street, any cattle, sheep, swine or calves. He was charged with slaughtering calves, in a building on Jefferson avenue. He claims the ordinance to be invalid.

The only provisions of the charter which confer power over this subject are subdivisions 29 and 33, of section 22, chapter 5. Subdivision 29 authorises the Common Council to compel the owners and occupants of slaughter houses, and other designated establishments, to cleanse or abate them, *whenever necessary for the health, comfort or convenience of the inhabitants of the city.* This power can only be exercised to do away with what are legally nuisances, and does not authorize the Council, as it could not, to interfere with what is not a nuisance in fact. Subdivision 33 gives power to the Council

to "prohibit and prevent, within certain limits in said city, to be determined by the Common Council, the location or construction of buildings for * * * slaughter houses, and yards, butcher's shops, &c."; "and such buildings, &c., now or hereafter to be constructed in said city, *whether within or without the limits, to be determined as aforesaid, &c.,* shall be subject to such regulations in relation to their construction and management, as the Common Council may make, with a view to the protection of any property from injury by fire, or to the health and safety of the inhabitants of said city, and to prevent them from becoming in any way nuisances."

It will be seen that the Council have no power to prohibit slaughtering animals any where upon their owner's premises, unless the building is devoted to that business. The ordinance in question makes no reference to the use of the building for any particular business, but punishes any act of slaughtering. This is clearly unauthorized.

It also appears that this building was used and fitted up for a slaughter house, before the ordinance was adopted. The charter only allows the Council to prevent future erections and locations of such establishments, and they have no right to put an end to any existing business of the kind, so long as it is not a nuisance in fact. They may under this authority regulate the future location of such establishments, if their ordinances are reasonable and not oppressive. The power given to them by the latter clauses of subdivision 33, to make reasonable regulations to prevent the creation of nuisances from the exercise of such business, is ample enough for the public protection; and is all that they can exercise against any business already established. They cannot declare that to be a nuisance which is not a nuisance, and they must confine their prohibitory action, aimed at fixing the locality of any business, to future erections or establishments. When any thing creates an actual nuisance it may be reached and punished, without reference to its duration, and its continuance as a nuisance can be adequately prevented.

We think the by-law in question is void, and the conviction should be quashed.

The other Justices concurred.