JOHN W. STOFFLET v. FREEMAN H. ESTES, HIGHWAY COMMISSIONER, ETC., AND JOHN C. LANGDON.

*Waters and water-courses—Navigable stream—Bridges—Injunction.*

1. A stream capable in its natural condition of floating logs at some seasons of the year was made navigable for a steamer of more than 15 tons burden, belonging to the owner of a flouring mill, by the erection of the dam which furnished the water power for the mill. Two bridges spanning the stream above the dam were, under an arrangement with the township authorities, furnished by the owner of the mill with draws for the accommodation of the steamer, which was used to transport the products of the mill up the stream, and through the lake in which it had its rise, to a railroad station near the lake, for shipment. The bridges were afterwards rebuilt, and placed sufficiently high above the stream to permit the steamer to pass under them, the extra expense being borne by the mill-owner. One of the bridges broke down, and the township authorities prepared to rebuild it in such a way

as to prevent the passage of the steamer, and the mill-owner filed a bill to enjoin such action on their part. No testimony was offered upon the hearing of the cause tending to show that complainant's right of flowage was in any way limited, or that he had not the right so to run his boat at all seasons. And it is held that the complainant cannot be thus deprived of his right to navigate the stream without condemnation and compensation.

2. The stream being navigable, the township officers had no right to erect the bridge without action by the board of supervisors under How. Stat. § 495, which provides that, when any township officers shall wish to construct any bridge across any stream at a point where the same is navigable for boats or vessels of 15 tons burden or more, they shall apply to the board of supervisors by petition for permission to do so.

Appeal from St. Joseph. (Loveridge, J.) Argued January 23, 1895. Decided February 26, 1895.

Bill to restrain the rebuilding of a bridge in such a way as to prevent the passage of complainant's boat. Complainant appeals. Decree reversed, and one entered in this Court as prayed. The facts are stated in the opinion.

*R. R. Pealer, George E. Miller,* and *B. E. & L. F. Andrews,* for complainant.

*H. P. Stewart* and *George L. Yaple,* for defendants.

HOOKER, J. Flowing from Portage lake, in St. Joseph county, is a stream called "Portage River," upon the banks of which, some distance below the lake, at a place called Parkville, the complainant maintains a dam and operates a flouring mill. He is also the owner of a steamboat capable of carrying something over 15 tons, which he and his grantors before him have used in transporting the product of the mill up the Portage river, through the lake, and up Bear creek, to Portage Lake station, upon the Grand Rapids & Indiana Railroad. The river above

the dam has, for many years, been spanned by two bridges. The dam and mill were erected at an early day. The boat was built in 1877 by a former owner of the mill, who, under an arrangement with the authorities of the township, caused draws to be constructed in the two bridges then existing for the accommodation of his boat. In 1881 the lower bridge was rebuilt, and, upon petition of some of the inhabitants of the vicinity, it was placed sufficiently high above the stream to permit the boat to go under it, the expense of raising the abutments and grading the road being paid by the owner of the boat. In 1885 the upper bridge was rebuilt under a similar arrangement. The lower bridge broke down under a threshing machine in 1892, and the township authorities prepared to rebuild it in such a way as to prevent the passage of complainant's boat, whereupon the bill in this cause was filed to restrain them, and a temporary injunction was issued. The bill being dismissed upon the hearing, complainant has appealed.

The testimony in this case satisfies us that this stream, in its natural condition, was sufficiently large and deep to permit of the floating of logs at some seasons of the year, but that it was not large or deep enough to float this steamer from Parkville to the lake until the dam was built. This, however, was sufficient to fix the character of the stream and the rights of riparian owners and the public in it. In *Moore v. Sanborne*, 2 Mich. 519, it was held that—

"The true test in determining the right of public use in fresh-water streams, as public highways, is whether a stream is inherently and in its nature capable of being used for the purposes of commerce for the floating of vessels, boats, rafts, or logs. Where a stream possesses such a character, the easement exists, leaving to the owners of the bed all other modes of use not inconsistent with it."

In that case it was held that the easement existed,

though the stream was not continually capable of such use.

Again, in the case of *Thunder Bay River Booming Co. v. Speechly*, 31 Mich. 336, Mr. Justice COOLEY reiterated the doctrine that the easement · existed during the seasons when the water was sufficient for the purposes of commerce, but that it extended no further than the use of the natural flow of water. After a discussion of the authorities, the distinguished jurist continues as follows:

"The doctrine, then, which we derive from the cases, is that a stream may be a public highway for floatage when it is capable, in its ordinary and natural stage, in the seasons of high water, of valuable public use. The inference sought to be drawn from it is that a navigable stream must, in contemplation of law, be navigable at all times, and under all circumstances; that there can be no such thing as a highway which is only open to the public use periodically, but that, when once the public character of the way is established, the right of the public to the easement is paramount to all private rights; and that nothing done to facilitate the public use can be the foundation of a right of action, unless in itself unreasonable, when the due subordination of private to public rights in the stream is considered and properly allowed for. But no such inference is warranted by the decisions. The highway they recognize is one *sui generis*, and in which the public rights spring from peculiar facts. It is a public highway by nature, but one which is such only periodically, and while the natural condition permits of a public use. During that time, the public right of floatage and the private right of the riparian proprietors must each be exercised with due consideration for the other, and any injury which the latter receives, in consequence of a proper use of the stream for floatage, he must submit to as incident to his situation upon navigable waters. *Middleton v. Booming Co.*, 27 Mich. 533. But, at periods when there is no highway at all, there is no ground for asserting a right to create a highway by means which appropriate or destroy private rights. The doctrine that this may be done without compensation to parties injured is at war with all our ideas of property and of constitutional rights. The most that can be said of this stream, during the seasons of low

water, is that it is capable of being made occasionally navigable by appropriating for the purpose the water to the natural flow of which the riparian proprietors are entitled.    It is highly probable, in view of the large interests which are concerned in the floatage, that the general public good would be subserved by so doing, but this fact can have no bearing upon the legal question.    It is often the case that the public good would be subserved by forcing a public way through private possessions, but it neither should be nor can be done under any circumstances without observing the only condition on which it can be permitted in constitutional government, namely, that the private proprietor be compensated for the value which he surrenders to the public."

The complainant and his grantors had a right to maintain the dam and pond, which last the defendants claim to have extended to the .lake, raising the water all the way, and making the river navigable for this boat.    This was a private pond, and nothing indicates that he had not a right to run his boat there at all seasons.    No testimony was offered tending to show that his rights were in any way limited, and, for aught that appears, he may have owned the fee of all the land covered by the pond.    His right to use the pond for running the steamboat was recognized when it was asserted, and the bridges were reconstructed to permit its exercise, and again when the bridges were rebuilt.    A decade or more after, when it became necessary to rebuild the lower bridge, the local authorities concluded to cut off his use of the stream.    To do this they propose to cut down the abutments and the approaches, instead of using them as they are, and to entail a loss upon him which is unnecessary.    Many interesting questions suggest themselves in connection with the case, but under the proofs we think that the complainant cannot be deprived by the township officers of what appears to be his right without condemnation and compensation.

Moreover, the stream being navigable, the local authorities have no right to build a bridge without action by

the board of supervisors, who may direct how it should be built. Const. art. 18, § 4; How. Stat. §§ 493, 495, 496. The record indicates that the board has never authorized a bridge at this place, and there is no pretense that the change proposed has been sanctioned. There are many streams in the State which have been made deeper by dams. In ponds so formed, sometimes extending for miles, good-sized boats may float, where formerly only logs could float in times of freshets. In such cases, if the stream is navigable for any purpose, the private rights of individuals are protected against arbitrary action by local authorities, who may only act when and in such way as the supervisors permit, and then not in contravention of private rights.

The decree of the circuit court will be reversed, and one entered here in favor of the complainant in accordance with the prayer of his bill, with costs of both courts.

LONG, GRANT, and MONTGOMERY, JJ., concurred. Mc-GRATH, C. J., did not sit.