VoorhEES, J.
Plaintiffs, as heirs of C. B. Deming, deceased, are the owners in fee of the premises situated in the city of Cleveland, and particularly described in their petition. They claim that a natural unnavigable water course, known as Girl ding’s' brook, runs and has run or flowed through said premisesimm'emorially, and in the way and manner described i(n| their petition; that said premises are now, and for more than twenty-five years have been occupied as a homestead by the plaintiff, George Deming, and family; that the waters of said! brook are now and have been for the period aforesaid, used by the plaintiffs for irrigating purposes, for watering stock, and other domestic purposes, and said brook adds greatly to the comfort and enjoyment of plaintiffs, as well as to the value.of said premises.
That about the month of March, 1899. without the knowledge or consent of plaintiffs, the city council of defendant city passed an ordinance providing for the entire diversion of the said brook from plaintiffs’ said premises, by the con-1, struction of an artificial water course intercepting said brook or stream at a point above and more than a mile south off. plaintiffs’ premises, conducting the waters thereof into Take Erie, and entirely away from said premises, thereby depriving plaintiffs of their riparian rights and benefits in and to said stream, to their damage in the sum of not less than $5,000, and without providing or attempting to provide any compensation to plaintiffs therefor. That if said defendant be permitted to carry out its said purpose as provided for in said ordinance, the plaintiffs will be without adequate remedy at law.
*3 As a second cause of action the plaintiffs allege, in substance, that the city, to provide for the payment of the expenses of said artificial water course, including rights of way of owners of land through which- said artificial water course is to run, and without compensation to plaintiffs as aforesaid, caused to be levied and placed upon the tax duplicate of said city and county, for immediate collection by the defendant Lander, as treasurer of said county, a tax against all the plaintiffs’ lands abutting said stream so to be diverted, amounting in the aggregate to $2,000.
It is claimed by the plaintiffs that said pretended improvement is not of any benefit to the enjoyment or value of their said premises, and is in violation of their rights, and wholly illegal and void. Wherefore they ask that the defendant be enjoined from diverting said water course and from collecting said tax.
By its answer, the defendant city admits that said stream, Giddings brook, runs and has run through plaintiffs’ premises as alleged in their petition; that the city by ordinance passed in March, 1899, provided for the entire diversion of said brook from said lands of plaintiffs by the construction of an artificial water course, as alleged in the petition; that for the purpose of providing for the expenses in getting the right of way for a new water course, etc., said city caused the levy to be made and placed on the tax duplicate against the lands of the plaintiffs.
The city bases its right to pass the ordinance, and do the things complained of, under and by the authority of an act of the legislature, passed April 7,1898,, (93 O. L., 530) : that in pursuance of said act, the council of said city, about May 31, 1898, adopted the resolution declaring the brook, described in the petition, to be a nuisance, and dangerous to the inhabitants of said city and a menace to the public health; that on November 14, 1898, said council did declare by resolution, that said brook had become a nuisance and a menace to the health of the citizens living upon and in the vicinity of said brook, between certain designated points stated in the answer, and further declared that it deemed it necessary, and the council declared its intention, to construct a drain be *4 twen certain points, designated. in said answer, for the purpose of . diverting the waters of, Giddings brook over and through.the route, described in its answer,, and to levy an assessment on lots and lands bounding and abutting .upon said stream.
• All of the acts of the city complained of by plaintiffs are asserted by it to have been legally and lawfully done, under and by virtue of the authority conferred by said' act of the legislature of April 7,.’ 1898.
The issue thus presented by the pleadings is principally one of corporate capacity, and-raises questions of law rather than fact. .
The cause comes into this court on.appeal from the common pleas and has been heard upon testimony. It has been ably argued on both sides by counsel in oral arguments and by briefs. «
The contention of the defendant city as to its right to divert the stream as contemplated, is based, upon the authority or power conferred by the act of the legislature of April 7, 1898, (93 O. T-, 530.) The first section of this act provides :
“That any city of the second grade of the first class be -and it is hereby authorized to divert or change the cour$e of any brook, stream, or non-navigable water course within-such city which shall be found by the council of such city to, be dangerous to the inhabitants of such city, and a menace to-the public health; and it is further authorized and empowered, to construct pipes and drains, through any of the streets, or highway of such city, for the purpose of conveying and* carrying away and disposing of the water and other accumulations from such brook, stream or non-navigable water course.”
If it cannot be stated as a conceded fact that Giddingsbrook is a natural water course, flowing through the premises of the plaintiff, there can be no question from the evidence, that it is such a stream. . A natural water course may be created by the flow of surface water. Kelly v. Dunning, 39 N. J. E., 483. The water need not flow continually;! many water courses are sometimes, dry. . Angel-1, Water *5 Courses, Sec. 4; 26 Cent. Law Jour., 26-31; Fryer v. Warne, 29 Wis. 515.
We therefore find from the evidence that Giddings' brook , is a natural water course, and that it is now and has immem-;j orially'flowed through the premises of plaintiffs.. ■ }
Our next inquiry will be: What property rights,, if-qny,. ¡ have the plaintiffs in the stream or its waters?. ^
Riparian proprietors upon both navigable and non-navi-M gable streams, are entitled, in the absence of grants, license b or prescriptions limiting their rights, to have water, which.: washes their land, flow as is its wont by nature, without' ma- b terial diminution or • alteration. The proprietors have no property in the flowing water, but the right to use-the watef'x; shall be regarded and protected as property. ■ The right- to- ■„> the use of water in its natural flow is not a mere easement c or appurtenance, but is inseparably annexed to'the soil' it- • self. Gould on Waters, Sec.-204, and authorities cited-in i nctes under the section; 6 Lawson's Rights & Rem., section ¡ 2914.
The right of the plaintiffs to this stream is property,-•-and is "valuable, and, though it must be enjoyed ifi due subjection to the rights of the public, it cannot be arbitrarily or capricidusly destroyed, or impairel. It is a right óf which, -when once vested, the owner can only' be deprived in accordance with” established’ law; and if necessary that it be taken for-the public good, upon due compensation.
The act of -the legislature under consideration confers' upon the city council of a city, like the city óf Cleveland; Ü.e! authority to divert or change the course uf any broou,, stream or non-navigabls water course within such city, which shall be found by the council of such 'city to be, dangerous to the inhabitants thereof, and a menace to public health, etc; and it is by this statute that the summary proceedings for the' diversion of Giddings brook are supposed" to be authorized. Can the mere declaration by the'city coup-' cil of Cleveland, that the stream is dangerous to it§ irihabitants, and a'menace to the public health,'make .it a nuisance unless if in fact had that character?
Without the aid of this statute, it will not be questibne'd *6 but whát the public remedy for abating a nuisance is ordinarily by indictment for the punishment of the offender, wherein, on judgment of conviction, the removal or destruction of the things constituting the nuisance, if physical and tangible, may be adjudged, or by bill in equity filed in behalf of the people. The plain reason of the rule is, that due process of law requires a hearing and trial before punishment, or before forfeiture of property can be adjudged for the owner’s misconduct. Lawton v. Steele, 119 N. ., 226 s. c. 16 Am. St. Rep., 813. Under Revised Statutes section 6931, the wrong-doer is liable to a fine.
The contention of the city is, that under the act of April 7th, E898, (93 O. I/.,) the council of the city has declared by ordinance, that for the public good it is necessary to divert and change the course of Giddings brook from plaintiffs’ premises, by the construction of an artificial water course to intercept said Giddings brook about a mile above plaintiffs’ premises, thereby conducting its waters away from said premises into Rake Erie.
It is further contended by the city that the statute above cited confers upon a city council of a city like Cleveland the power and authority by resolution or ordinance, to determine and declare in this summary way that any brook, stream, or non-navigable water course within such city is dangerous to the inhabitants of such city, and a menace to the public health, and for .that reason it may divert and change its course, regardless of the rights of riparian owners upon the stream.
In support of its contention the city claims that the act of the legislature in question, is a constitutional act and valid, it being only lawful exercise of the police power of; the state in regulating and abating public nuisances. Under this, power it is contended the state may confer authority upon municipalities as may be necessary for their internal government; and among these, the authority to adopt such sanitary regulations as may be required to provide for the safety and preserve the health of their inhabitants, and to this end may justify the destruction or abatement by summary proceedings of whatever may be regarded as a public nuisance.
*7 To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for ,the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not under the guise of protecting the public interest, arbitrarily interfere with private business or property, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a' proper exercise of the police powers is not final or conclusive, but is subject to the supervision of the court. Lawton v. Steele, 152 U. S., 130, 135, 136, 137.
Whether a nuisance exists or not in a particular case, justifying the exercise of the power by the municipal authorities, is a question of fact to be determined from the nature of the nuisance and the evidence.
Defendant city by its council under said act of April 7th, 1898, in' the month of March, 1899, passed a resolution declaring Giddings brook a nuisance, and dangerous to the inhabitants of said city, and a menace to the public health.
From the evidence submitted it appears that the waters of said brook, as they flow through the premises of plaintiffs, are and always have been apparently pure and wholesome, and have been used by the plaintiffs to water stock, irrigate their grounds and for other like domestic purposes. Plaintiffs have expended large sums of money in improving their grounds with special reference to said stream as a natural water course flowing through the same. All of which added greatly to the value thereof.
It appears further from the evidence that the alleged nuisance complained of by the city is largely, if not entirely, above the plaintiffs’ premises. In other words, it is up the stream from the plaintiffs’ premises, where the nuisance exists that is. complained of, and consists of encroachments made upon the stream by persons putting in narrow culverts, building privies upon the banks and over the channel of said stream; by the deposit of dead animals and other filth into said stream, and other acts and things that tend to corrupt and pollute its waters. The city council *8 claim that in view of these conditions resulting as -above stated, and without taking any steps under the statutes of the state,.namely section 6921,. or sections 2x49, 2150, 2151, 2152 to remove the nuisance thus created or to punish the parties committing the same, it proceeded in the summary, manner by resolution to declare the entire stream a nuisance and to divert its course from the premises of the plaintiffs. Such power in a municipal corporation to abate nuisances in any way it may deem expedient, is not an unrestricted power.Such means only are intended by the law as are necessary for the public good. The abatement-must be limited by its necessity; and no wanton or unnecessary injury to the property rights of individuals ’must be committed. Babcock v. City of Buffalo, 56 N. Y., 268; Lawton v. Steele, 152 U. S. 130.
The 'nuisance in the case at bar consists in the conduct of owners or occupants of property on and along the stream, by making improper use of it, by narrowing its channel, building- privies upon its banks or over its channel, and depositing- dead animals therein. All of which, so far as the evidence discloses, was with the knowledge of the city authorities, and no steps were taken by them to prevent the same. Under such circumstances, the remedy in such a case would and should be, for the city authoritces to stop this improper use of the stream and to remove therefrom the filth and bodies of dead animals so deposited therein. If. the nuisance, or unhealthful condition of the stream resulted from- these causes, and the plaintiffs’ portion of the stream is free from corruption, and -pollution, it would be imposing, an unusual and unnecessary burden or restriction upon their rights in the stream to declare the whole stream a nuisance and to arbitrarily divert it entirely from their premises.
■ The remedy by summary abatement cannot be extended beyond doing what is necessary to accomplish it. This principle is recognized and well expressed by Judge Anderson in Lawton v. Steele, 119 N. Y., at page 238, where he says:
“I-t cannot be denied that in many cases a-nuisance can only be abated by the destruction of the property in which it- consists. The cases • of infected cargo or clothing and of impure and unwholesome food are plainly of this descrip *9 tion. They are nuisances per se, and their abatement is'their destruction. So, also, there .can be little doubt, as we'conceive, that obscene books- or.-pictures, or implements only gapable of an illegal use, may be destroyed as a part of the process of abating the nuisance they create, if so directed by statute. The keeping of a bawdy house, or a house for the resort of lewd and dissolute people is a nuisance at common law. But the tearing down of the building so kept, would not be justifiel as the exercise of the power of summary abatement, and it would add nothing, we'think, to the justification that a statute was produced authorizing the destruction of the building summarily as a part of the remedy. The nuisance consists in the case supposed in the conduct of the owner or occupant of the house, in using or allowing it to be used for the immoral purpose, and the remedy would be to stop the use: This would be the only mode of abatement in such case known to the common law, and the destruction of the building for this purpose would have na sanction in common law or precedent. ■ (See Babcock v. City of Buffalo, 56 N. Y. 268; Barclay v. Commonwealth, 25 Penn. St., 503; Ely v. Board of Supervisors, 36 N. Y. 297.)
“But where a public nuisance consists in the location or' use of tangible personal property, so as to interfere with or' obstruct a public right or regulation, as in the case-of a float in the Albany basin-(9 Wend. 571,-) or the nets in the present case, the legislature may,- we think, authorize its sum-' mary abatement by executive agencies without resort to judicial proceedings, and any injury or. destruction of the property necessarily incident to the exercise of the summary' jurisdiction, interferes with no legal right of the owner. But' the legislature cannot go further. It cannot decree-the destruction or forfeiture of property used so. as to constitute a nuisance as a punishment of.the wrong, nor even, -we1 think, to prevent a future - illegal use of the property, it’not'being a nuisance per' se, and-appoint officers to execute its - mandate. The plain reason is that due process of law requires a hearing and trial before punishment, or before for-' f.eiture of property can be adjudged for the owner’s misconduct. Such legislation would be a plain usurpation by the *10 legislature of judicial power, and under guise of exercising the power of summary abatement of nuisances, the legislature cannot take into its own hands the enforcement of the criminal or quasi criminal law. •
“(See opinion of Shaw, Ch. J., in Fisher v. McGirr, 1 Gray 1, and in Brown v. Perkins, 12 Gray, 89.)”
Mr. Tiedeman in his late work (1900) on State and Federal Control of Persons and Property, vol. 2, sec. 146, discussing the right to abate public nuisances, at page 734 says: “The right to abate public nuisances whether we regard it as existing in the municipalities, or in the communities, or in the hands of the individuál, is a common law right, and is derived in every instance of its exercise, from the same source — that of necessity. It is akin to the right of destroying property for the public safety in case of the prevalence of a devestating fire or other controlling exigencies. But the necessity must be present to justify the exercise of the right, and whether present or not, must be submitted to a jury under guidance of a court. The finding of a sanitary committee, or of a municipal council or of any other body of a similar kind, can have no effect whatever, for any purpose, upon the ultimate disposition of a matter of this kind.” Citing Hutten v. City of Camden, 39 N. J., 122; s. c. 23 Am. Rep., 209.
The author further says:
“To the same effect is the following question from the opinion of the supreme court of the United States in a case in which the constitutionality of a city ordinance was questioned, which declared certain wharf structures to be nuisances and provided for their removal: “The mere declaration by the city council of Milwaukee that a certain structure was an encroachment or an obstruction did not malife it so, nor could such a declaration make it a nuisance unless it in fact had that character. It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the state, within which a given structure can be shown to be a nuisance, can, by a mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place very home, every business and all the *11 property of the city, at the uncontrolled will of the temporary local authorities.” Citing Yates v. Milwaukee, 10 Wall., 505.
Neither the legislature nor the city council of the city can make a stream of water a nuisance by declaring it so. Its character in that regard can only be established by legal proceedings. In other words, a city cannot arbitrarily by ordinance; declare property a nuisance and destroy it, unless it is in fact a nuisance. When it is in factjiot a nuisance, no authority to remove it is. derived from'the o^ler declaring it to be such.
This doctrine is recognized in Yates v. Milwaukee supra; Salem v. Railroad Company, 98 Mass., 431; State v. Jersey City, 29 N. J. L., 170; Chicago v. Laflin, 49 Ill, 172; Babcock v. Buffalo; 56 N. Y., 268.
Whether the thing complained of be or be not a nuisance, ' is a question of fact, and, if the rights of private property are involved in the question, the person complained of is entitled to a trial in a competent tribunal of that question before he (an be deprived of his property.
The supreme court of the United States in Mugler v. Kansas, 123 U. S. 623, 661, said:
“If,therefore, a statute purporting to have'been enacted to protect the public health, the public morals, or the public safety, has no real substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is a duty of the court to so adjudge, and thereby give effect to the constitution.”
The statute under which this property right of the plaintiffs in-this stream is sought to be taken, makes no provision for compensation, no trial by jury or otherwise is provided for, hence it cannot be said that this is a taking by due process of law, and for this reason the act is a clear violation of article I, section 19, of the constitution.
Whether any particular thing or act is not permitted by the law of the state, must always be a judicial question, and, therefore, the question what is and what is not a public nuisance, must be judicial; .md it is not competent to delegate it to the local legislature or administrative boards. Yates v. Milwaukee, supra; Redford v. People, 14 Mich., 41; State *12 v. Street Com., 36 N. J., 263; Everett v. Council Bluffs, 45 Iowa, 66; Hutton v. Camden, supra; St. Louis v. Schnuchelberg, 7 Mo. App., 536.
The local declaration that a nuisance,, exists is, therefore, not conclusive, and the party concerned may contest the fact in the court. Ex parte O’Leary, 65 Miss., 80; Hennesy v. St. Paul, 37 Fed. Rep., 563; Arkadelphia v. Clark, 52 Ark., 23; Janesville v. Carpenter, 77 Wis., 28; s. c. 20 Am. Rep., 123.
There are some things which in their nature are nuisances, and which the law recognizes as such. There are others which may or may not be so, their character in this respect depending on circumstances. And in the latter, it is manifestly beyond the power of the municipality to declare in advance that those things are a • nuisance; the question when the thing may or may not be a nuisance must be settled as one of fact and not of law. That a running stream or water course is not in its nature a nuisance per se, we htink, is quit® clear. It is not in the list of common law nuisances enumerated in the text books. Wood on Nuis. (2 Ed.) section 23, et seq.
It follows as it would seem from an unbroken line of authorities, that the act of the legislature conferring this extraordinary power on the city of Cleveland, whereby it assumes to divert this stream from the premises of the plaintiff, because the council of said city declared by resolution it to be a nuisance, is unconstitutional and void; and all the proceedings of the council under and by virtue of this legislative’ act are necessarily null and void, and the defense based thereon must fail.
Since the court takes this view of the law, we do not deem it necessary to decide upon the right of the city in a proper case; and under a valid law, to assess property of abutting owners on a stream for benefits resulting to their property by reason of a legal diversion of a stream from their’property, as a legal diversion under .a valid law does not arise in this; case. We, therefore, hold that the plaintiffs are entitled to the relief against the city and the-defendant Eander, as treas *13 urer, as prayed for in their petition; and this is the decree ; of the court, with costs,
'M. B. Gary and A. B. Thompson, for -Plaintiffs.
■T. H. Hogsett, Beacom, Gage & Carey, for Defendants.

Note — A. B. Thompson, tor: Plaintiff in Error: To constitute a water course, the size of the stream is. unimportant. It may be very small, and need not constantly flow. Washburn on Easements, ¶ 2U9 and cases cited. Spangler v. San Francisco, 18, Am.St.R. 158-9; 4 Ballard Real Property, sec. 874; Board v. Wagner, 130 Ind. 609. Or it may at times , .greatly overflow its banks. Byrne v. Minneapolis, 8 Am. St. R., 668, Syl.; West v. Taylor, 16 Ohio R. 165; Bloodgood v. Ayres, 108 N. Y. 400.
,l2.) An unnavigable water course, is as much the property of the owner of the land through which the stream flows, as any other portion of the estate. It is. a part of the freehold itself. Washburn, Par. 213, 214, 215; Alta Land Company v. Hancock, 20 Am. St. R. 219; Clark v. Penn. R. R. Co., 27 Am. St. R., 710, and notes; Ulbricht v. Eufraul, 11 Am. St. R. 72 and notes.
(3.) Plaintiff could only be deprived of this stream by due oourse of law, either by an individual, city ordinance or act of the legislature, which ordinance or state law, must provide for his full compensation therefor. Washburn, par. 215; Cummings v. Tracy, 39 Barb. 311; Smith v. City of Rochester, 44 Am. R., 393, 404, 405; Grand Rapids v. Powers, 28 Am. St., 276; Constitution of Ohio, sec. 19-1; Cooper v. Williams, 5 Ohio R., 244-5; Railway v. Bohm, 34 Ohio St., 114; Melton v. Dickerson, 38 Neb., 367; Cooper v. Williams, 4 Ohio R., 794, 795; Clark v. Cambridge, 45 Neb. 798; Lux v. Haggin, 69 Cal. 255; Steoffet v. Estes, 104 Mich., 208; 4 Ballard Real Property, sec. 877; Youngstown v. Moore, 30 Ohio St., 133.
(4.) Even if in some respects the stream be found to be a nuisance, it cannot be taken away without condemnation, and compensation. Hulton v. City of Camden, 23 Am. R., 203, cases cited in note; Walker v. Board Public Works, 16 Ohio R., 540, note.
If those occupying the upper portion of this stream polluted its waters, it was no fault of the plaintiff, and it was the duty of the city to see to it that the evil be corrected,and the stream purified. 14 Am. St. R., 319, 324 and notes; R. S. sec. 2149, 2150, 2151, 2152.
(5.) Neither a city council nor state legislature can make a stream of water a nuisance by declaring it such. Its character in that regard can only be established by legal proceedings. Attadelpha v. Clark, 20 Am. St. 154 and case cited; Walker v. Board of Public Works, 16 Ohio. R., 540, 4, 5, 6, 7; Grand Rapids v. Powers, 28 Am. St., 276 and cases cited; 89 Mich. 94; Village v. Royer, 5 Am. St., 524 and cases cited.
The statute under which this proceeding is instituted, Session Laws, 93 O. L., 530, not only provides for taking private • *14 property, but provides no compensation therefor, and is therefore void. Edson v. Crongle, 62 Ohio St., 49; Ohio Constitution 1851, Art I, sec. 19; McArthur v. Kelly, 5 Ohio R. 84, 85, 86, 93, and 94; Lamb v. Lane, 4 Ohio St. 167; Strom v. Starret, 4 Ohio St. 494 and 500; Henderson v. State, 44 Ohio St. 208; Reeves v. Treasurer, 8 Ohio St. 333, Syl.; Lamb & McKee v Lane, 4 Ohio St., 167; Colter v. Doty, 5 Ohio R. 244 and 5; Cohn v. Right, 22 Cal. 318.
(6.) This statute as well as the ordinance made in pursuance thereof is void because of its usurpation of judicial functions. 28 Am. St. Rep. 276, 289, 290, 291, 292; Jamesville v. Carpenter, 20 Am. St. Rep., 124, 132, 133, 134, 135; Mater v. Frazee, 6 Am. St. R., 310, syllabi 1, 2 and 3.
The' legislature has no power of oontrol over a stream of waer other than to regulate an easement in case the stream be navigable. 44 Am. Rep. 404; 35 N. Y. 451; 20 John, 99. Thi* stream is non-navigable, and therefore neither the council nor the legislature had any more right to legislate in respect to this property of the plaintiff or take it from him, than any other portion of his land so far as any interest of the publio is concerned. Smith v. City of Rochester, 44 Am. Rep, 393, 404 and cases cited 405; 5 Ohio R., 87
(7.) It is no defense to a pending action for injunction that the injuries to the riparian rights of the plaintiff are little,or that they are difficult to estimate, as where a stream flowing along and through land in many ways might be valuable and useful. Its waters to a greater or less extent would moisten and irrigate the lands, thereby causing them to produce more or less abundantly, etc. Heilborn v. Fowler, etc., 7 Am. St. R., 183, 187 and cases cited. Heilborn v. Last Chance Water Co., 75 Cal., 117.
(8.) This proceeding is in no sense a proceeding to improve this water course, but is purely a proceeding to condemn and remove the same, for wniob proceeding there is r.o authority in law. And the private property sought to be taken thereby is in no legal sense for publio use, is not embraoed in section 2264-4, and therefore void. Ehni et al. v. City of Columbus, 3 Ohio Cir. Ct. Rep , 494.
Neither the statute nor the ordinance made in pursuance thereof, attempts to provide for compensation to the owner of this private property thus sought to be taken, nor is any tax to be levied therefor.
(12.) In what manner this private property oould have been taken is clearly shown by section 1692-19 R. S., which defines the powers of a city, and especially provides for the- improvement of a natural stream of water. It could not have been taken in any other manner. Lamb v. Lane, 4 Ohio St., 167; Shaver v. Starett, 4 Ohio St.; Harbeck v. City of Toledo, 11 Ohio St., 226; Krumberg v. City of Cincinnati, 29 Ohio St., 69; Youngstown v. Moore, 30 Ohio St., 134.
Neither the city council nor the legislature have the power to declare private property a nuisance, and on that account destroy or appropriate it. Whether the thing complained of be or be not a nuisance is a question <'f fact, and if the rights of private property are involved in the < uestien, the psrson complained of is entitled to a trial in a <o>npetent tribunal of that *15 question before he can be deprived of his property. 17 O. R., 387; Edson v. Crangle, 62 Ohio St., 49.
(The brief then proceeds to argue that the act is unconstitutional, as a law of a general nature but applicable only to the city of Cleveland. The case was, however, decided by the Court on the foregoing question only.)
T. H. Hogsett and Beacom, Gage & Carey, for Defendant in Error: To the claim that if this stream or brook be a nuisance and the city of Cleveland by its neglect arid its failure properly 10 enforce sanitary rules has made it so, the defendant answers hat some things are beyond the power of the best police system in the world. Any tiny stream of the size and character of this one, passing through three miles of densely populated territory, populated not only by men and women and children but by dogs and cats and chickens and horses, with all the waste and offal that must come from this dense aggregation of animals, lying lower than the ground occupied by these animals, that no stream of this character could by any possibility ór by any thoroughness of policing, be retained pure.
The removal of this brook is not a taking of private property which must be done by appropriation proceedings, for even admitting that the stream is pure and that all the claims of damage by reason of the deprivation of the use of the stream are true, still, it is only an “injuring” and “damage”, and is authorized by sec. 2316 R. S., which provides that the improvement may be proceeded with and the damages assessed' after the improvement is made, 50 Ohio St., 361-7, and our proceedings have all'been under this provision, sec. 3 of our ordinance, providing that damages to property should be assessed after the improvement is made. This section applied, if the stream were a pure and healthful stream, only on the theory that its removal is not a “taking”, but an “injuring’'. 1 > Am. & E. Enel. Law. 2d Ed., 1103, sub-head 4; 28 Am. & E. Enel. Law, 945,' (1st B.). ■
(2.) The evidence clearly shows that the brook is a nuisance and a menace to .public health.
Gan a municipal council deolare something to be a nuisance and order it abated, or is that a purely judicial question; and,
Second, if the court hold that a stream in a pure condition is property which can be taken away only by appropriation proceedings, then if it become a nuisance and a menace to public health, does it cease to be property?
Under sec. 2149 R. S. O., a municipal council may fill up a lot on which water stagnates and make the expense thereof a lien upon the land. Sec. 2116 and 2126 R. S. give Boards of Health power to declare certain things nuisances and to destroy them. If Boards of Health can be given that power certainly it can be given to the council. Wood’s Law of Nuisances, secs. 743-4-5, and note; The Slaughter House Cases; 28 Eno. of Law, (1st Ed.) 960. ;
The officers of the municipality may be clothed with the power to determine that a thing is a nuisance and to abate it. The exercise of such power is not exclusively a judicial power, but subject to the restriction that they cannot declare a thing *16 to-be a nuisance which ia not a nuisance, and they cannot with impunity under the name of protecting the public health, destroy property when the public health is not actually in danger, and if plaintiSs were to come into this court and aver that tbe declaration of the oouncil of the city was false and that Giddings Brook was not a menace to public health, then this court would inquire into the action of the council, and if that averment of the petition were true, they would necessarily find against the city.