KRIEG v. KAUFMAN.

1. WATERS AND WATERCOURSES—FLOWING LANDS—EVIDENCE—SUFFICIENCY.

On a bill to restrain the erection of a dam and the flooding of plaintiff's land, evidence *held*, sufficient to sustain the finding of the court below that plaintiff's lands were flooded by the dam as originally built and maintained, but that an additional sluiceway ordered to be built will be ample to relieve plaintiff.

2. APPEAL AND ERROR—PROPRIETY OF PERMITTING PLAINTIFF TO ELECT DAMAGES IN GROSS—REVIEW.

Where defendants did not appeal from the decree of the

On the question of correlative rights of upper and lower riparian owners, generally, see note in 41 L. R. A. 737.

court below, the propriety of permitting ⹀laintiff to elect to accept his damages in gross is not open for consideration on appeal.

3. WATERS AND WATERCOURSES—DAMAGES—MODIFICATION OF DE-
   CREE.

   Evidence held, sufficient to require modification of the decree of the court below allowing plaintiff $360 damages instead of $260; conditioned on acceptance within 30 days; if not accepted, decree requiring defendants to build additional sluiceway to be entered.

Appeal from Marquette; Flannigan, J. Submitted June 13, 1919. (Docket No. 25.) Decided July 17, 1919.

Bill by Frank E. Krieg against Samuel R. Kaufman and another to enjoin the flooding of plaintiff's land. From a decree granting insufficient relief, plaintiff appeals. Modified, and affirmed.

*W. S. Hill,* for plaintiff.

*E. A. Macdonald,* for defendants.

FELLOWS, J. Sauk's Head lake, a small inland lake, is located in Marquette county. It is about three-quarters of a mile long and about half that distance wide. Its outlet is Garlic river, a stream about a quarter of a mile long flowing into Lake Superior. At the head of the lake plaintiff owns 36.2 acres of land. Defendants own considerable land surrounding the lake and own the land on both sides of the outlet. Some of the plaintiff's land is high; this is light soil and does not appear to be valuable for agricultural purposes. Nearer the lake is soil of a productive quality and is the most valuable of the entire piece. It is called by the plaintiff "meadow" land and by the defendants "swamp." Some part of plaintiff's land is a cedar swamp. Defendants are using and propose to use lands owned by them located on and near the

outlet as a summer camp. At the time the bill was filed and pending the litigation they were engaged in the expenditure of from $25,000 to $30,000 in building a summer home and otherwise improving their property. In 1904 lumber operators constructed a dam in the Garlic river to aid in driving logs. After the lumbering operations were over it fell into disuse. When defendants acquired their lands and commenced their improvements the Garlic was in such condition as would be expected in a wild country. Defendants removed the debris and prepared to erect a dam on the site of the old one so that they might use the river for boating and to transport materials and supplies from the railroad station. For the purpose of restraining the erection of this dam and the flooding of plaintiff's land this bill was filed. The dam was completed before the case was tried. It is a substantial structure and a driveway passes over it. It had two sluiceways said to be double the capacity of the sluiceway in the old dam. Defendants insist it does not flood or interfere with plaintiff's rights; plaintiff insists it does, and that irreparable injury is done him thereby. The trial judge reached the conclusion that the dam as erected did flood plaintiff's premises and concluded that an additional sluiceway in the dam ten feet wide would be ample to restore normal conditions. Recognizing that the course was unusual he gave the plaintiff the election to take a decree fixing his damages in gross at $260 and provided that if such damages were accepted the defendants should be permitted to maintain the level of the lake and river at a fixed point. Plaintiff appeals. Defendants do not.

Plaintiff's counsel not only takes issue with the conclusions of the trial judge as to the facts but most strenuously insists that a mandatory injunction should issue requiring defendants to remove the dam entirely. Counsel should not overlook the fact that the plaintiff,

a riparian owner, is entitled that the waters of this lake adjacent to his land shall stand as they were wont to stand, that his lands should not be overflowed more than they were wont to be overflowed, but unless such rights are interfered with and invaded, the defendants, lower riparian owners, are entitled to the beneficial use of the stream. We are persuaded from a careful reading of this record and an examination of the exhibits that the trial judge correctly found that the plaintiff's lands were flooded by the dam as originally built and maintained, and we are equally persuaded that the additional sluiceway ordered to be built will be ample to relieve plaintiff from any overflow occasioned by the dam. In this regard we agree with the conclusion of the trial judge.

The defendants not having appealed, the propriety of permitting the plaintiff to elect to accept his damages in gross is not for our consideration. If such damages are to be fixed in this case and an election given to plaintiff to accept them, and upon this record, and for the purposes of this case we must so assume without determining the propriety of such practice where objection is made, we are impressed that the amount found by the trial judge is not adequate for the damage to plaintiff, past, present and future. There is a conflict of testimony on the question of value of plaintiff's premises. We have already noted that the meadow land so-called is the most valuable. The testimony discloses that the high land is less valuable than the meadow and the cedar swamp also of less value. Some 12 acres of plaintiff's land will be rendered worthless if the level is maintained at the point fixed by the trial judge in case of election to accept damages in gross; of these 12 acres 7 are meadow and 5 cedar swamp. While the testimony as to value varied somewhat, we are impressed that that

given by the witness Robert Blemhuber is the most reliable and the most disinterested. He owns land adjoining that of the plaintiff, and in commenting on his testimony on another branch of the case the trial judge referred to him as "a well known resident of Marquette, who owns a frontage of 3,500 feet on the lake adjoining the plaintiff's land, who was one of the wholly disinterested witnesses in the case." Mr. Blemhuber fixes the value of plaintiff's good land at $30 an acre and backs up his judgment with an offer under oath to buy at that figure. He had before that offered plaintiff $1,000 for the piece. While the cedar swamp is not so valuable as the meadow which consists of 16 or 18 acres, we must bear in mind that some damage by seepage, which is difficult to estimate, will be done the balance of the meadow by the overflowing of the other land, and taking everything into consideration, and particularly the fact that plaintiff could have sold the entire piece for $1,000, we are impressed that $30 per acre for the 12 acres rendered worthless, or $360, will compensate plaintiff for his damages, past, present and future.

Plaintiff may elect within 30 days from the filing of this opinion to accept a decree for $360 damages in gross with the provisions attached by the trial judge in his opinion. In default of such election a decree will be entered requiring defendants to build the sluiceway as provided by the trial judge. If plaintiff elects to take a money judgment, costs of this court will be awarded to him. If not, no costs will be allowed to either party.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.